Edwin Aiwazian (Cal. State Bar No. 232943)
*edwin@calljustice.com*
Arby Aiwazian (Cal. State Bar No. 269827)
*arby@calljustice.com*
Joanna Ghosh (Cal. State Bar No. 272479)
*joanna@calljustice.com*
Annabel Blanchard (Cal. State Bar No. 329407)
*annabel@calljustice.com*
**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Tel: (818) 265-1020 / Fax: (818) 265-1021

*Attorneys for* Plaintiff

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY GRAYSON, III, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act,<br><br>        Plaintiff,<br><br>   vs.<br><br>NUTRIEN, a Colorado corporation; NUTRIEN AG SOLUTIONS, INC., an unknown business entity; WESTERN FARM SERVICE, INC., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: 1:21-cv-00986-ADA-BAM<br><br>Honorable Barbara A. McAuliffe<br>Department 8<br><br>**CLASS ACTION**<br><br>**DECLARATION OF ANNABEL BLANCHARD IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Plaintiff's Motion for Preliminary Approval of Class Action Settlement; Declaration of Proposed Class Representative (Bobby Grayson, III); and [Proposed] Order filed concurrently herewith]<br><br>Date:<br>Time:         9:00 a.m.<br>Department:   8<br><br>Complaint Filed:  April 2, 2021<br>FAC Filed:      June 1, 2021<br>SAC Filed:      August 13, 2021<br>TAC Filed:      October 25, 2021<br>Trial Date:     None Set |

## DECLARATION OF ANNABEL BLANCHARD

I, Annabel Blanchard, hereby declare as follows:

1.     I am an attorney licensed to practice law in the State of California.  I am a member of Lawyers *for* Justice, PC, attorneys of record for Plaintiff Bobby Grayson, III ("Plaintiff").  The facts set forth in this declaration are within my personal knowledge or based on information and belief, and if called as a witness, I could and would competently testify thereto.

### EXPERIENCE AND ADEQUACY OF LAWYERS *for* JUSTICE, PC

2.     Since October 2008, Lawyers *for* Justice, PC has almost exclusively focused on the prosecution of consumer and employment class actions, involving wage-and-hour claims, race discrimination, unfair business practices, or consumer fraud.  Currently, the firm is attorney of record in over a dozen employment-related putative class actions in both state and federal courts in the State of California. Lawyers *for* Justice, PC is comprised of attorneys who focus on litigating complex wage-and-hour class and Private Attorneys General Act ("PAGA") representative actions.    The firm has successfully litigated cases involving the executive, administrative, and other overtime exemptions to the State of California and federal overtime compensation requirements.  During a relatively short time, in association with other law firms, Lawyers *for* Justice, PC has recovered millions of dollars on behalf of thousands of individuals in California.   Below is a summary of the experience and qualifications of the attorneys at Lawyers *for* Justice, PC who most recently and primarily have been responsible for the representation of Plaintiff in connection with the resolution of above-captioned matter.  Additional attorney and non-attorney staff have also worked on the above-captioned matter.

3.     Edwin Aiwazian is the Managing Member and Shareholder of Lawyers *for* Justice, PC.   He received his Bachelor of Arts degree from Pepperdine University in April of 1999 and earned a Juris Doctor degree from Pepperdine University School of Law in May of 2004.  He has extensive formal training in

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**DECLARATION OF ANNABEL BLANCHARD IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

dispute resolution and negotiation from the Straus Institute for Dispute Resolution as part of its Masters in Dispute Resolution degree program.  In addition, he has previously served as a pro bono mediator for the Los Angeles County Superior Court.  In October of 2000, he obtained a Litigation Paralegal Certificate from the UCLA Extension Program.  During the summer of 2000, he studied Legal Writing at Harvard University.  From approximately September 2002 to approximately December 2002, he served as a Judicial Extern to the Honorable Kim McLane Wardlaw of the United States Court of Appeals for the Ninth Circuit.  From approximately June 2002 to approximately August 2002, he served as a Judicial Extern to the Honorable Earl Johnson, Jr. of the California Court of Appeal for the Second Appellate District.  In December of 2004, he obtained a license to practice law from the California State Bar.  From approximately December 2004 to approximately August 2008, he was employed by Girardi & Keese.  At Girardi & Keese, his practice focused on class actions and other complex cases involving toxic torts and products liability.  In addition, he gained substantial experience on cases involving insurance bad faith, premises liability, and medical negligence.  While employed by Girardi & Keese, he argued approximately one hundred (100) motions, took or defended approximately one hundred fifty (150) depositions, and prepared dozens of expert witnesses for deposition or trial.  Since in or around October of 2008, through his work at Lawyers *for* Justice, PC, he has almost exclusively focused on the prosecution of consumer and employment class actions, involving wage-and-hour claims, race discrimination, unfair business practices, or consumer fraud.  While employed by Lawyers *for* Justice PC, he has argued over one hundred (100) motions, taken or defended over one hundred fifty (150) depositions, prepared dozens of expert witnesses for deposition or trial, and attended over one hundred seventy-five (175) mediations.  Together with other attorneys at the firm, and in many cases in conjunction with co-counsel, he has successfully litigated cases involving the executive, administrative, and other overtime exemptions to the State

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**DECLARATION OF ANNABEL BLANCHARD IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

of California and federal overtime compensation requirements.   Under his supervision, Lawyers *for* Justice, PC has successfully obtained class certification by contested motion practice in approximately fifteen (15) cases in the last decade, and litigated over 1,000 class action or representative action cases.

4.      Arby Aiwazian is a Member and Shareholder of Lawyers *for* Justice, PC.   He received his Bachelor of Arts degree from University of California, Los Angeles and graduated magna cum laude.   He earned a Juris Doctor degree, cum laude, from Southwestern Law School.   From approximately May 2007 to approximately July 2007, he served as a Judicial Extern to the Honorable Earl Johnson, Jr. of the California Court of Appeal for the Second Appellate District. From approximately August 2008 to approximately December 2008 he served as a Judicial Extern to the Honorable Kim McLane Wardlaw of the United State Court of Appeals for the Ninth Circuit. He was admitted to practice law in California in 2010. He is admitted to practice before all courts of the State of California and all United States District Courts in the State of California.   He has worked on many wage-and-hour class action and representative action cases, taking the lead in taking and defending depositions, arguing motions, and attending mediations.   He has played an integral role in preparing matters for class certification, including and not limited to, successful certification of a class in *Upson v. Sur La Table* (Los Angeles County Superior Court Case No. BC424012), *Montazemi v. Regus Management* (Los Angeles County Superior Court Case No. BC478769), and *Abdulhaqq v. Urban Outfitters* (Alameda County Superior Court Case No. RG13680477).   Under his and Edwin Aiwazian's supervision, dozens of class action or representative cases have resulted in settlements that have been granted court approval, including and not limited to, those listed in paragraph 7 herein.   He has worked on over one hundred (100) class action or representative action cases which have resulted in settlement.

///

///

**DECLARATION OF ANNABEL BLANCHARD IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

5.     Joanna Ghosh is a Senior Member of Lawyers *for* Justice, PC.  She received a Bachelor of Arts degree from California State University, Los Angeles in 2006, a Master of Science degree from the London School of Economics in 2007, and a Juris Doctor degree from Georgetown University Law Center in 2010.  She is admitted to practice in California (since 2010) and in New York (since 2013) and is also admitted to practice in all U.S. District Courts in California, the U.S. Bankruptcy Court for the Central District of California, and the U.S. Supreme Court.  She has taken and defended dozens of depositions and successfully handled motion practice in class action cases regarding discovery (including and not limited to, regarding class contact information), class certification (both contested class certification and stipulated class certification), arbitration agreements, coordination, and intervention.  She has successfully handled briefing and oral argument on appeal, and obtained notable decisions regarding the Private Attorneys General Act and employer efforts to compel arbitration, e.g., *Roberto Betancourt v. Prudential Overall Supply* (Cal. Ct. App., Mar. 7, 2017) 9 Cal.App.5th 439, cert. denied (Cal., May 24, 2017), cert. denied (U.S., Dec. 11, 2017) and *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th175.  She also has extensive experience with class action and/or representative action settlements.  Under the supervision of Edwin Aiwazian, Arby Aiwazian, and Joanna Ghosh, the firm has handled the class certification and court approval process for hundreds of class action and/or representative action matters that have successfully resolved.  She is a member of the California Employment Lawyers Association.

6.     I am a Member of Lawyers *for* Justice, PC.  I received my Bachelor of Arts degree from University of California at Berkeley in 2001 and earned my Juris Doctor degree from Southwestern University School of Law in 2008.  I was admitted to practice law in California in 2008.  I am admitted to practice before all courts of the State of California.  I have worked on many wage-and-hour class action and PAGA representative cases, and my work has included, *inter alia*, researching

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

DECLARATION OF ANNABEL BLANCHARD IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

and drafting pleadings, administrative notice exhaustion, drafting, negotiating, and finalizing stipulations and settlement agreements, engaging in motion practice, claims evaluation and analysis, and making court appearances. Prior to working at Lawyers *for* Justice, PC, I worked for over a decade providing estate planning and other legal services to the special needs community, including, *inter alia*, representing clients at mediations with school districts and California Regional Centers.

## EXAMPLES OF RESULTS IN WAGE-AND-HOUR CLASS ACTION AND REPRESENTATIVE ACTION CASES

7.      What follows are just a few examples of the type of results Lawyers *for* Justice, PC ("LFJ") has achieved on behalf of its clients:

a)      LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class action against a major property management company involving allegations of misclassification of various "manager" positions. On September 20, 2010, the court granted final approval of the class action settlement. The Los Angeles County Superior Court Case Number is BC400414.

b)      LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class action against a national retailer of household items involving allegations of misclassification of the "Assistant Store Manager" position. On October 28, 2010, the court granted final approval of the class action settlement. The Los Angeles County Superior Court Case Number is BC413498.

c)      LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class action against a national property management company involving allegations of misclassification of the "Property Manager" position. On May 23, 2012, the court granted final approval of the class action settlement. The Los Angeles County Superior Court Case Number is BC430918.

d)      LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class action against a national retailer involving

allegations of misclassification of the "Store Manager" position.  On June 10, 2011, the court granted plaintiffs' motion for class certification.  On August 26, 2013, the court granted final approval of the class action settlement.  The Los Angeles County Superior Court Case Number is BC424012.

e)      LFJ, in association with co-counsel therein, represented the plaintiff in a wage-and-hour class and PAGA representative action against a bank, involving allegations of misclassification of the "Assistant Branch Manager" position.  On August 27, 2013, the court granted final approval of the class and PAGA representative action settlement.  The Kern County Superior Court Case Number is S-1500-CV-273194-LHB.

f)      LFJ, in association with co-counsel therein, represented the plaintiff in a wage-and-hour class and PAGA representative action against a national wholesale distributor of plumbing and builder supplies, involving allegations of misclassification of multiple salaried "manager" positions.  On May 22, 2014, the court granted final approval of the class and PAGA representative action settlement.  The Sacramento County Superior Court Case Number is 34-2012-00136285.

g)      LFJ, in association with co-counsel therein, represented the plaintiff in a wage-and-hour class action against a multinational corporation that provides global workplace solutions, involving allegations of misclassification of the "Operations Manager" position.  On September 16, 2014, the court granted plaintiff's motion for class certification.  The Los Angeles County Superior Court Case Number is BC478769.

h)      LFJ, in association with co-counsel therein, represented the plaintiff in a wage-and-hour class and PAGA representative action against a national retailer of household items, on behalf of hourly-paid or non-exempt employees.  On May 27, 2015, the court granted final approval of the class and PAGA representative action settlement.  The San Francisco County Superior Court Case Number is CGC-13-532344.

DECLARATION OF ANNABEL BLANCHARD IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

i) LFJ, in association with co-counsel therein, represented the plaintiff in a wage-and-hour class and PAGA action involving allegations of misclassification of the salaried residential "Property Manager" position. On September 17, 2015, the court granted plaintiff's motion for class certification. On October 20, 2017, the court granted final approval of the class and PAGA representative action settlement. The Los Angeles County Superior Court Case Number is BC474784.

j) LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class and PAGA representative action against a national retailer of upscale hardware and home furnishings, on behalf of non-exempt employees. On April 28, 2016, the court granted final approval of the class and PAGA representative action settlement. The Los Angeles County Superior Court Case Numbers are BC516795 and JCCP4794, and the Judicial Council Coordination Proceeding Number is 4794.

k) LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class action against a national retailer of apparel and fashion accessories, on behalf of non-exempt employees. On August 5, 2016, the court granted final approval of the class action settlement. The Los Angeles County Superior Court Case Number is BC488069.

l) LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class action against a national retailer of apparel, accessories, and home products, involving allegations of misclassification of the "Department Manager" position. On August 12, 2016, the court granted the plaintiffs' motion for class certification in part and certified a class. On August 6, 2019, the court granted final approval of the class action settlement. The Alameda County Superior Court Case Number is RG13680477.

m) LFJ represented the plaintiff in a PAGA representative action against a real estate and property management company, on behalf of non-exempt

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

employees. On November 4, 2016, the court granted approval of the PAGA representative action settlement. The Orange County Superior Court Case Number is 30-2015-00775439-CU-OE-CXC.

n) LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class and PAGA representative action against a full-service bank, on behalf of non-exempt employees. On November 18, 2016, the court granted final approval of the class and PAGA representative action settlement. The San Francisco County Superior Court Case Number is CJC-13-004839 and the Judicial Council Coordination Proceeding Number is 4839.

o) LFJ represented the plaintiffs in a wage-and-hour class and PAGA representative action against a foodservice distributor, on behalf of non-exempt employees. On January 26, 2017, the court granted final approval of the class and PAGA representative action settlement. The San Bernardino County Superior Court Case Number is CIVDS1507260.

p) LFJ, on behalf of the plaintiff and respondent in a PAGA representative action, successfully opposed in the trial court, and briefed and argued an appeal with respect to the employer's motion to compel arbitration, which resulted in a published opinion by the California Court of Appeal in favor of employees. *Roberto Betancourt v. Prudential Overall Supply* (Cal. App. 4th Dist., Mar. 7, 2017) 9 Cal.App.5th 439, review denied, cert. denied (U.S. Supreme Court Docket No. 17-254). The Riverside County Superior Court Case Numbers are RIC1503952 and RICJCCP5046, and the Judicial Council Coordination Proceeding Number is 5046.

q) LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class and PAGA representative action against a consumer packaging company, on behalf of non-exempt employees. On March 10, 2017, the court granted final approval of the class  and PAGA representative action settlement. The Los Angeles County Superior Court Case Number is BC590429.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

r)     LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class and PAGA representative action against a manufacturer of food service industry supplies on behalf of non-exempt employees. On April 14, 2017, the court granted final approval of the class and PAGA representative action settlement. The Orange County Superior Court Case Number is 30-2015-00810013-CU-OE-CXC.

s)     LFJ in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class and PAGA representative action against a lumber and hardware company on behalf of non-exempt employees.  On April 26, 2017, the court granted final approval of the class and PAGA representative action settlement. The Orange County Superior Court Case Number is 30-2014-00747750-CU-OE-CXC.

t)     LFJ represented the plaintiff in a wage-and-hour class and PAGA representative action against a property management company, on behalf of non-exempt employees. On June 14, 2017, the court granted final approval of the class and PAGA representative action settlement. The Los Angeles County Superior Court Case Number is BC586234.

u)     LFJ represented the plaintiff in a wage-and-hour class and PAGA representative action against a food company on behalf of non-exempt employees. On June 30, 2017, the court granted final approval of the class and PAGA representative action settlement. The Sacramento County Superior Court Case Number is 34-2015-00175871.

v)     LFJ represented the plaintiffs in a wage-and-hour class and PAGA representative action against a chocolate company on behalf of non-exempt employees. On July 19, 2017, the court granted final approval of the class and PAGA representative action settlement. The Alameda County Superior Court Case Number is RG15764300.

**DECLARATION OF ANNABEL BLANCHARD IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

w)     LFJ represented the plaintiff in a PAGA representative action, against the parent company of several restaurants, on behalf of hourly-paid, non-exempt employees.  On October 18, 2017, the court granted approval of the PAGA representative action settlement.  The Los Angeles County Superior Court Case Number is BC569664.

x)     LFJ represented the plaintiffs in a wage-and-hour class and PAGA representative action against a manufacturer of plastic containers on behalf of non-exempt employees. On October 31, 2017, the court granted final approval of the class and PAGA representative action settlement. The Los Angeles County Superior Court Case Number is BC577233.

y)     LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class and PAGA representative action against a bank on behalf of non-exempt employees.  On December 11, 2017, the court entered an order granting final approval of the class and PAGA representative action settlement.  The Los Angeles County Superior Court Case Number is BC569646.

z)     LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class and PAGA representative action against a property management company on behalf of hourly-paid and non-exempt employees. On January 4, 2018, the court entered an order granting final approval of the class and PAGA representative action settlement. The Los Angeles County Superior Court Case Number is JCCP4819 and the Judicial Council Coordination Proceeding Number is 4819.

aa)     LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class and PAGA representative action against a global provider of flexible office space solutions. On February 15, 2018, the court granted final approval of the class and PAGA representative action settlement. The Los Angeles County Superior Court Case Number is BC498401.

bb)     LFJ, in association with co-counsel therein, represents the

DECLARATION OF ANNABEL BLANCHARD IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

plaintiff in a wage-and-hour class action against a container manufacturer, on behalf of non-exempt employees. On October 15, 2018, the court granted the plaintiff's motion for class certification. The Tulare County Superior Court Case Number is VCU264528.

cc)     LFJ represented the plaintiffs in a wage-and-hour class and PAGA representative action against a behavioral health service provider on behalf of non-exempt employees.  On November 13, 2018, the court granted final approval of the class and PAGA representative action settlement.  The Alameda County Superior Court Case Number is RG16811450.

dd)     LFJ, in association with co-counsel therein, represented the plaintiff in a PAGA representative action against a global provider of products and services to the energy industry, on behalf of hourly-paid and non-exempt employees. On November 19, 2018, the court granted approval of the PAGA representative action settlement.  The Kern County Superior Court Case Number is S-1500-CV-280215-SDC.

ee)     LFJ, in association with co-counsel therein, represents the plaintiff in a wage-and-hour class action against a parking company on behalf of non-exempt employees.  On September 3, 2019, the court granted the plaintiff's motion for class certification and certified a class.  The Santa Clara County Superior Court Case Number is 16CV292208 and the Judicial Council Coordination Proceeding Number is 4886.

ff)     LFJ, in association with co-counsel therein, represents the plaintiffs in a wage-and-hour class and PAGA representative action against a bank on behalf of non-exempt employees.  On September 27, 2019, the court granted the plaintiffs' motion for class certification in part and certified a class.  The Alameda County Superior Court Case Number is RG15757606 and the Judicial Council Coordination Proceeding Number is 4921.

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**DECLARATION OF ANNABEL BLANCHARD IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

gg)   LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class and PAGA representative action against a national retailer of apparel and fashion accessories, on behalf of non-exempt employees.  On October 9, 2019, the court granted the plaintiffs' motion for class certification in part and certified a class.  On May 14, 2021, the court granted final approval of the class and PAGA representative action settlement.  The Sacramento County Superior Court Case Number is 34-2015-00175330-CU-OE-GDS.

hh)   LFJ, in association with co-counsel therein, represents the plaintiff in a wage-and-hour class and PAGA representative action against a medical equipment supplier on behalf of non-exempt employees.  On February 13, 2020, the court granted the plaintiff's motion for class certification and certified a class.  The San Bernardino County Superior Court Case Number is CIVDS1505744.

ii)   LFJ, in association with co-counsel therein, on behalf of the plaintiff and respondent in a PAGA representative action, successfully opposed in the trial court, and briefed and argued an appeal with respect to the employer's motion to compel arbitration, resulting in a notable decision from the California Supreme Court clarifying the law and finding, in part, that employer arbitration agreements are unenforceable where they block a PAGA claim from proceeding, *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175.  On February 21, 2020, the court granted approval of the PAGA representative action settlement.  The San Diego County Superior Court Case Number is 34-2015-00175330.

jj)   LFJ, in association with co-counsel therein, represented the plaintiff in a wage-and-hour class and PAGA representative action against a large national drug testing laboratory on behalf of non-exempt employees.  On February 21, 2020, the court granted the plaintiff's motion for class certification and certified a class.  On October 28, 2022, the court granted final approval of the class and PAGA representative action settlement.  The San Diego County Superior Court Case Number is 37-2018-00019611-CU-OE-CTL.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

kk)     LFJ, in association with co-counsel therein, represents the plaintiffs in a wage-and-hour class and PAGA representative action against a national retailer of sportswear, footwear, and camping equipment on behalf of non-exempt employees.  On March 16, 2020, the court granted in part the plaintiff's motion for class certification and certified a class.  The Riverside County Superior Court Case Numbers are RIC1507504 and RICJCCP4930, and the Judicial Council Coordination Proceeding Number is 4930.

ll)     LFJ, in association with co-counsel therein, represented the plaintiffs in a wage-and-hour class action against manufacturer and supplier of power products and services on behalf of non-exempt employees.  On July 31, 2020, the court granted in part the plaintiffs' motion for class certification and certified a class.  On August 27, 2021, the court granted final approval of the class action settlement.  The San Diego County Superior Court Case Number is 37-2015-00025968-CU-OE-CTL.

mm)    LFJ represents the plaintiff in a wage-and-hour class action against a nutritional products manufacturer on behalf of non-exempt production line employees.  On December 13, 2021, the court granted the plaintiff's motion for class certification in part and certified a class. The Solano County Superior Court Case Number is FCS051001.

## BASIC INFORMATION ABOUT THE CASE AND REACHING THE SETTLEMENT

8.      Marked and attached hereto as "**EXHIBIT 1**" is the Joint Stipulation of Class Action and PAGA Settlement and Release ("Settlement," "Agreement," or "Settlement Agreement") entered into by and between Plaintiff, on the one hand, and Defendant Nutrien AG Solutions, Inc. ("Defendant Nutrien AG"), on the other hand (collectively, the "Parties").   The Parties and their counsel have approved the proposed Notice of Class Action Settlement ("Class Notice"), which is attached to the Settlement Agreement as "Exhibit B" and respectfully request that the Court

approve it as well.

9.     Based on information provided by Defendants Nutrien, Nutrien AG Solutions, Inc., Western Farm Services Inc., and Crop Production Services, Inc. (collectively "Defendants"), the Class is estimated to consist of approximately 2,370 individuals.

10.     The effectiveness of Lawyers *for* Justice, PC ("Plaintiff's Counsel" or "Class Counsel") in prosecuting this matter has translated into tangible monetary benefits in the following respects: (1) Class Members, the State of California, and PAGA Employees recover over a reasonably short period of time as opposed to waiting additional years for the same, or possibly worse, result; (2) a guaranteed result that compares favorably with other complex wage and hour class and/or representative action settlements of similar type given the strengths and weaknesses of the case; and (3) significant savings in attorneys' fees and/or costs that would have only increased significantly had the case progressed through certification, trial, and/or appeals.

11.     Plaintiff's Counsel has litigated the case for two years and was actively preparing the matter for class certification and trial. The Parties have engaged in extensive settlement negotiations and participated in a formal, full-day mediation conducted by Jeffrey Krivis, Esq., a well-respected mediator experienced in mediating complex labor and employment matters.   Prior to and during the mediation and settlement discussions, the Parties exchanged extensive information and engaged in discussions regarding their evaluations of the case and various aspects of the case, including but not limited to, the risks and delays of further litigation, the risks to the Parties of proceeding with class certification and/or representative adjudication, the law relating to off-the-clock theory, meal and rest periods, wage-and-hour law and enforcement, and PAGA representative actions, as well as the evidence produced and analyzed, and the possibility of appeals, among other things.   During all settlement discussions, the Parties conducted their

negotiations at arm's length in an adversarial position.  Arriving at a settlement that was acceptable to all Parties was not easy.  Defendants and their counsel felt strongly about their ability to prevail on the merits and at certification, and Plaintiff and Plaintiff's Counsel believed that they would be able to obtain class certification and prevail at trial.  After conducting investigations, informal discovery, and exchange of information, extensive settlement negotiations, and with the aid of the mediator's evaluation, the Parties have agreed that the matter is well-suited for settlement given the legal issues relating to Plaintiff's principal claims, as well as the costs and risks to both sides that would attend further litigation.  The Settlement is a fair, reasonable, and adequate resolution of Plaintiff and the Settlement Class Members' Released Class Claims, with respect to Defendants and the Released Parties, for the Class Period, and resolution of Plaintiff and PAGA Employees' Released PAGA Claims, with respect to Defendants and the Released Parties, for the PAGA Period.

12.    Prior to reaching the Settlement, Plaintiff's Counsel investigated the veracity, strength, and scope of the claims, and was preparing the action for class certification and trial.  Plaintiff's Counsel conducted significant investigation and informal discovery regarding the facts of the case, including and not limited to, the exchange, review, and analysis of a large volume of documents and data obtained from Defendants, Plaintiff, and other sources.  The volume of data and documents that Plaintiff's Counsel reviewed and analyzed included and was not limited to: Plaintiff's employment records, a detailed sampling of Class Members' pay and time data, Crop Production Services, Inc.'s Employee Handbook, Nutrien AG Solutions, Inc.'s Employee Handbook, Defendants' operations and employment practices, procedures, and policies (including, but not limited to, Defendants' Rest and Meal Breaks Policy, Waiver of Meal Periods Policy, On-Duty Meal Period Policy, Cell Phone Reimbursement for Business Use of Personal Cellular Devices Policy, Employee    Classification    Policy,    and    Time    Card    Reporting    Policy),

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

acknowledgements and agreements (including, but not limited to, Defendants' Employee Acknowledgement of Receipt of Policy Regarding Meal and Rest Periods, On-Duty Meal Period Agreement, and On-Duty Meal Period Agreement Revocation), forms (including, but not limited to, Defendants' Consent to Waive Meal Periods), among other information and documents.  Counsel for the Parties also met and conferred on numerous occasions, e.g., to discuss issues relating to the pleadings, jurisdiction, motion practice, and the production of documents and data prior to the mediation.  Plaintiff's Counsel also drafted pleadings, motion-related papers, and the mediation brief and prepared for and attended court proceedings, mediation, and settlement negotiations, among other tasks.

13.    Counsel for the Parties have also invested time researching and investigating the applicable law, which is constantly evolving as it relates to certification, off-the-clock theory, meal and rest periods, representative PAGA claims, and wage-and-hour enforcement, Plaintiff's claims and damages, and Defendants' defenses thereto, as well as facts discovered.  Based on Plaintiff's Counsel's analysis, the result achieved in this litigation is fair, adequate, and reasonable.

14.    The Settlement provides for a Maximum Settlement Amount of Four Million Five Hundred Thousand Dollars ($4,500,000.00).  The Net Settlement Amount is the Maximum Settlement Amount less the following amounts subject to approval by the Court: Attorneys' Fees and Costs, Enhancement Payment, Settlement Administration Costs, and the PAGA Amount.  Assuming that the amounts allocated under the Settlement toward these payments are awarded by the Court, the Net Settlement Amount that will be available for distribution to Settlement Class Members is currently estimated to be Two Million Eight Hundred Seventy Thousand and Five Hundred Dollars ($2,870,500.00).  Additionally, 75% of the PAGA Amount, which is $375,000.00 out of $500,000.00, will be distributed to the Labor and Workforce Development Agency ("LWDA Payment") and 25% of the PAGA

**DECLARATION OF ANNABEL BLANCHARD IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

Amount, which is $125,000.00 out of $500,000.00, will be distributed to the PAGA Employees ("PAGA Employee Amount").  The Maximum Settlement Amount will be fully distributed in accordance with the terms of the Settlement and there is no reversion to Defendants.

15.     The Parties have agreed to retain Phoenix Settlement Administrator ("Settlement Administrator" or "Phoenix") to handle the notice and settlement administration process.  The Parties respectfully request that the Court appoint Phoenix to handle these procedures and serve as the Settlement Administrator. Defendant Nutrien AG will provide the Settlement Administrator with a list of Class Members that Defendants will compile from their records, which will include each Class Member's last-known full name, mailing address, telephone number, Social Security number; dates employed as a non-exempt employee of Defendants in California during the Class Period, and such other information as is necessary for the Settlement Administrator to calculate Workweeks (collectively referred to as "Class List"), and the Settlement Administrator will calculate each Class Member's estimated *pro rata* share of the Net Settlement Amount ("Individual Settlement Share") and each PAGA Employee's estimated *pro rata* share of the PAGA Employee Amount ("Individual PAGA Payment").   The Settlement Administrator will also receive opt-outs, objections, and disputes regarding Workweeks; provide necessary reports and declarations; calculate, subtract, and transmit necessary taxes and withholdings; prepare and submit informational and other tax filings and documents; issue and transmit all payments provided for by the Settlement, including and not limited to, mailing Individual Settlement Payments to Settlement Class Members and mailing Individual PAGA Payments to PAGA Employees; and perform any other usual and customary duties for administering a class action settlement.  Settlement Administration Costs are currently estimated not to exceed Twenty-Six Thousand Dollars ($26,000.00) and will be paid out of the Maximum Settlement Amount, subject to approval of the Court.

**DECLARATION OF ANNABEL BLANCHARD IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

16.     Based on investigation and information discovered, Plaintiff's Counsel believes that there is sufficient evidence to support the allegations made in the lawsuit, including the allegations that Defendants, with respect to Plaintiff and the Class Members, *inter alia*, failed to properly pay overtime and minimum wages, failed to provide compliant meal and rest periods and to pay associated premium pay, failed to timely pay wages during employment and upon termination of employment and associated waiting time penalties, failed to provide compliant wage statements, and failed to reimburse necessary business expenses, and thereby engaged in unfair business practices and conduct giving rise to civil penalties recoverable under the Private Attorneys General Act of 2004 (California Labor Code sections 2698, *et seq.*).  Plaintiff also asserted that Class Members were expected to perform similar job duties and were subject to the same or similar operations and employment policies, practices, and procedures.  Additionally, Plaintiff asserted that Defendants' recordkeeping practices with respect to Plaintiff and Class Members were substantially the same during the time period at issue.  As a result of said alleged uniform practices, Plaintiff claims that Class Members were not paid all of the compensation that was owed to them by Defendants.  Thus, in Plaintiff's Counsel's view, it is clear that the outcome of this litigation would be determined by Defendants' uniform operations and employment practices, policies, and procedures that Plaintiff alleges applied across Defendants' non-exempt employees within the State of California during the relevant time period.

17.     Plaintiff's Counsel is aware of the defenses and position of Defendants but believes that Plaintiff could potentially obtain class certification despite many obstacles.  Plaintiff and Plaintiff's Counsel have also taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation, including those involved in class certification and/or representative adjudication.  Plaintiff and Plaintiff's Counsel further recognize the burdens of proof necessary to establish liability for the claims asserted

in the lawsuit, Defendants' defenses, and the difficulties in establishing entitlement to monetary recovery.  Plaintiff and Plaintiff's Counsel have also considered the Parties' settlement discussions, as well as the evaluations of the mediator, who is experienced and well-regarded in complex labor and employment matters.

18.    Defendants, on the other hand, denied and continue to deny any liability and wrongdoing of any kind associated with the allegations in the lawsuit, and further deny that the lawsuit is appropriate for class treatment or representative adjudication for any purpose other than the Settlement.  Defendants believe that they would ultimately succeed in the matter.  Both sides have also had the opportunity to investigate and consider the facts and circumstances surrounding Plaintiff's and Class Members' employment with Defendants, and Defendants' operations and employment policies, practices, and procedures. The Parties also reviewed and analyzed a volume of documents and data, including but not limited to a detailed sampling of Class Members' pay and time data, to determine the potential value and strength of the claims.  The available information enabled Plaintiff's Counsel to assess and value the class and PAGA claims and prepare violation, damages, and penalties analyses and models.  Accordingly, the Parties have conducted adequate investigation and discovery to be sufficiently informed of the nature and extent of the class and PAGA claims, and to enable both sides to fully evaluate the Settlement for its fairness, adequacy, and reasonableness.  The Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at certification, trial, and/or appeals.

19.    The Settlement Agreement provides for Plaintiff's Counsel to apply for attorneys' fees in an amount of up to thirty-five percent (35%) of the Maximum Settlement Amount and expenses and costs in an amount not to exceed Sixteen Thousand Dollars ($16,000.00), which will be paid out of the Gross Settlement Amount, subject to approval by the Court.  It should be noted that Plaintiff's Counsel has borne all of the risks and costs of litigation and will not receive any

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  compensation until recovery is obtained.

2      20.   The Settlement Agreement provides for payment of up to Twelve

3  Thousand Five Hundred Dollars ($12,500.00) to Plaintiff as an Enhancement

4  Payment, to be paid out of the Maximum Settlement Amount subject to approval by

5  the Court.   Plaintiff spent considerable time and effort to produce relevant

6  documents and past employment records and to provide the facts and evidence

7  necessary to attempt to prove the allegations.   Plaintiff was available whenever

8  Plaintiff's Counsel needed Plaintiff, and actively tried to obtain information that

9  would facilitate the pursuit of the class and PAGA claims.   Accordingly, it is

10  appropriate and just for Plaintiff to receive an Enhancement Payment, in addition to

11  his Individual Settlement Payment and Individual PAGA Payment, for services

12  performed in the matter on behalf of the Class, State of California, and PAGA

13  Employees.

14      21.   Plaintiff's Counsel submits that the Settlement is fair, reasonable, and

15  adequate, and is in the best interests of Plaintiff, the Class, State of California, and

16  PAGA Employees.  Plaintiff's Counsel further submits that the Settlement is within

17  an acceptable range of recovery for this type of litigation given the strengths and

18  weaknesses of the case, the inherent costs and risks of further litigation, and the

19  costs and risks associated with class certification, representative adjudication, trial,

20  and/or appeals.

21      I declare under penalty of perjury under the laws of the State of California that

22  the foregoing is true and correct.

23      Executed on this 14th day of July 2023, at Los Angeles, California.

24

25      /s/ Annabel Blanchard
        Annabel Blanchard

26

27

28

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

20

**DECLARATION OF ANNABEL BLANCHARD IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# EXHIBIT 1

## JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE

This Joint Stipulation of Class Action and PAGA Settlement and Release ("Settlement," "Agreement" or "Settlement Agreement") is made and entered into by and between Plaintiff Bobby Grayson, III ("Plaintiff" or "Class Representative"), individually, on behalf of all others similarly situated and on behalf of the State of California with respect to PAGA Employees (as defined herein), and Defendant Nutrien AG Solutions, Inc. ( "Defendant") (collectively, Plaintiff and Defendant are referred to as the "Parties").

This Joint Stipulation of Class Action and PAGA Settlement and Release shall be binding on Plaintiff, Settlement Class Members (as defined herein), the State of California with respect to PAGA Employees (as defined herein) and on Defendant, subject to the terms and conditions hereof and the approval of the Court.

### RECITALS

1.      On April 2, 2021, Plaintiff filed a Class Action Complaint for Damages, thereby commencing a putative class action entitled *Bobby Grayson, III v. Nutrien, et al.* in the Superior Court of California for the County of Tulare, Case No. VCU286503 ("Action") against Defendants Nutrien, Nutrien AG Solutions, Inc., Western Farm Service, Inc., and Crop Production Services, Inc. (collectively "Defendants").  On March 25, 2021, Plaintiff provided notice by electronic upload to the Labor and Workforce Development Agency and written notice by certified mail to Defendants of the specific provisions of the California Labor Code and Industrial Welfare Commission Wage Order that are alleged to have been violated by Defendants ("Initial PAGA Notice").  On June 1, 2021, Plaintiff filed a First Amended Class Action Complaint for Damages & Enforcement Under the Private Attorneys General Act, California Labor Code § 2698, *Et Seq*. in the Action.  On June 21, 2021, the Action was removed to the United States District Court, Eastern District of California and assigned Case No. 1:21-cv-00986-ADA-BAM.  On August 13, 2021, the Court, pursuant to the Parties' joint stipulation, accepted Plaintiff's Second Amended Class Action Complaint for Damages & Enforcement Under the Private Attorneys General Act, California Labor Code § 2698, *Et Seq*. for filing in the Action.  On October 25, 2021, Plaintiff filed a Third Amended Class Action Complaint for Damages & Enforcement Under the Private Attorneys General Act, California Labor Code § 2698, *Et Seq*. in the Action.  On June 13, 2023, Plaintiff sent

additional, follow-up correspondence to the Labor and Workforce Development Agency and Defendants regarding the specific provisions of the California Labor Code and Industrial Welfare Commission Wage Orders that are alleged to have been violated by Defendants ("Additional PAGA Notice").  Together, the Initial PAGA Notice and Additional PAGA Notice are herein referred to as "PAGA Notices")

2. Defendants deny all material allegations set forth in the Action and have asserted numerous affirmative defenses.  Notwithstanding, in the interest of avoiding further litigation, Defendants desire to fully and finally settle the Action, the Released Class Claims, and the Released PAGA Claims.

3. Class Counsel in the Action diligently investigated the claims against Defendants, including any and all applicable defenses and the applicable law.  The investigation included, *inter alia*, the exchange of information, data, and documents, and review of corporate policies and practices.

4. On February 7, 2021, the Parties participated in mediation with Jeffrey Krivis, Esq. (the "Mediator"), a respected mediator of complex wage and hour actions, and with the assistance of the Mediator's evaluations, the Parties reached the settlement that is memorialized herein.  The settlement discussions were conducted at arm's-length, and the Settlement is the result of an informed and detailed analysis of Defendants' potential liability and exposure in relation to the costs and risks associated with continued litigation.  Based on the documents produced, as well as Class Counsel's own independent investigation and evaluation, Class Counsel believes that the settlement with Defendants for the consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, and adequate and is in the best interest of the Class Members and the State of California in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation and various defenses asserted by Defendants.

5. The Parties expressly acknowledge that this Settlement Agreement is entered into solely for the purpose of compromising significantly disputed claims and that nothing herein is an admission of liability or wrongdoing by Defendants.  If for any reason the Settlement Agreement is not approved, it will be of no force or effect, and the Plaintiff and Defendants shall be returned to their original respective positions.

**DEFINITIONS**

6.      The following definitions are applicable to this Settlement Agreement.   Definitions contained elsewhere in this Settlement Agreement will also be effective:

a.      "Attorneys' Fees and Costs" means attorneys' fees for Class Counsel's litigation and resolution of the Action and all actual costs incurred and to be incurred by Class Counsel in the Action, as set forth in Paragraph 11 below.

b.      "CAFA Notice" means the notices of the Settlement Agreement to be sent to the relevant government agencies as required by the Class Action Fairness Act, 28 U.S.C § 1715.

c.      "Class Counsel" means Arby Aiwazian, Joanna Ghosh, and Annabel Blanchard of Lawyers *for* Justice, PC, who will seek to be appointed counsel for the Class.

d.      "Class List" means a complete list of all Class Members that Defendant will diligently and in good faith compile from their records and provide to the Settlement Administrator.  The Class List will be formatted in a readable Microsoft Office Excel spreadsheet and will include each Class Member's last-known full name, mailing address, telephone number, Social Security Number, weeks worked as a non-exempt employee of Defendants in California during the Class Period.

e.      "Class Member(s)" or "Class" means all current and former non-exempt employees who worked for any of the Defendants within the State of California at any time during the Class Period.  Defendants represent that the number of Class Members is approximately 2,306 individuals, as of February 7, 2023.

f.      "Class Notice" means the Notice of Class Action Settlement, substantially in the form attached as "**Exhibit B**."

g.      "Class Period" means the time period from October 6, 2016 through Preliminary Approval or June 7, 2023, whichever is earlier.

h.      "Class Representative" or "Plaintiff" means Bobby Grayson, III.

i.      "Class Settlement" means the settlement and resolution of all Released Class Claims.

j.      "Court" means the United States District Court, Eastern District of California.

k.      "Defendants" means collectively Nutrien, Nutrien AG Solutions, Inc., Western

Farm Service, Inc., and Crop Production Services, Inc.

l.      "Defendants' Counsel" means Christopher W. Decker of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

m.      "Effective Date" means the later of (a) the last day on which any appeal might be filed with respect to the Final Approval Order and Judgment, assuming no appeal is filed, or (b) the date of successful resolution of any appeal(s) with respect to Final Approval Order and Judgment – including expiration of any time to seek reconsideration of further review.

n.      "Employer Taxes" means the employers' share of taxes and contributions in connection with the wages portion of Individual Settlement Shares, which shall be paid by Defendant in addition to the Maximum Settlement Amount.

o.       "Enhancement Payment" means the amount to be paid to Plaintiff in recognition of his effort and work in prosecuting the Action on behalf of the Class Members and State of California with respect to PAGA Employees.

p.      "Final Approval" means the determination by the Court that the Settlement is fair, reasonable, and adequate, and entry of the Final Approval Order and Judgment based thereon.

q.      "Final Approval Hearing" means the hearing at which the Court will consider and determine whether the Settlement should be granted Final Approval.

r.      "Individual PAGA Payment" means the *pro rata* share of the PAGA Employee Amount that a PAGA Employee may be eligible to receive for the PAGA Settlement, to be calculated in accordance with Paragraph 16.

s.      "Individual Settlement Payment" means the net payment of each Settlement Class Member's Individual Settlement Share, after reduction for the employee's share of taxes and withholdings with respect to the wages portion of the Individual Settlement Share, as provided in Paragraph 27 below.

t.      "Individual Settlement Share" means the *pro rata* share of the Net Settlement Amount that a Class Member may be eligible to receive for the Class Settlement, to be calculated in accordance with Paragraph 15.

u.      "LWDA Payment" means the amount of Three Hundred Seventy-Five Thousand

Dollars ($375,000.00), i.e., 75% of the PAGA Amount, that the Parties have agreed to pay to the California Labor and Workforce Development Agency ("LWDA") for the PAGA Settlement, as set forth in Paragraph 14.

v.   "Maximum Settlement Amount" means the amount of Four Million Five Hundred Thousand Dollars ($4,500,000.00) to be paid by Defendant in full resolution of all Released Claims and the Action, which includes all Attorneys' Fees and Costs, Enhancement Payment, PAGA Amount, Net Settlement Amount to be paid to the Settlement Class Members, and Settlement Administration Costs. Defendant shall pay the Employer Taxes separately and in addition to the Maximum Settlement Amount. The Maximum Settlement Amount is subject to increase, as provided in Paragraph 38 below.

w.   "Net Settlement Amount" means the portion of the Maximum Settlement Amount that is available for distribution to Settlement Class Members, which is the Maximum Settlement Amount less the Court-approved Enhancement Payment, Settlement Administration Costs, PAGA Amount, and Attorneys' Fees and Costs.

x.   "Objection" means a Class Member's written objection to the Class Settlement, which must: (a) contain the case name and number of the Action; (b) contain the Class Member's full name, signature, address, telephone number, and last four (4) digits of Social Security Number; (c) contain a written statement of all grounds for the objection accompanied by any legal support for such objection; (d) contain copies of any papers, briefs, or other documents upon which the objection is based; and (e) be submitted by mail to the Settlement Administrator at the specified address, postmarked on or before the Response Deadline.

y.   "PAGA Amount" means the allocation of Five Hundred Thousand Dollars ($500,000.00) from the Maximum Settlement Amount for the settlement and resolution of the Released PAGA Claims.  Seventy-five percent (75%) of the PAGA Allocation, or $375,000.00, will be paid to the LWDA (i.e., the LWDA Payment) and the remaining twenty-five percent (25%), or $125,000.00, will be distributed to PAGA Employees (i.e., the PAGA Employee Amount).

z.   "PAGA Employees" means all current and former non-exempt employees who worked for any of the Defendants within the State of California at any time during the PAGA Period.

aa.   "PAGA Employee Amount" means the amount of One Hundred Twenty-Five

Thousand Dollars ($125,000.00), i.e., 25% of the PAGA Amount, to be distributed to PAGA Employees on a *pro rata* basis based on their Workweeks.

bb.   "PAGA Period" means the time period from September 2, 2019 through Preliminary Approval or June 7, 2023, whichever is earlier

cc.   "PAGA Settlement" means the settlement and resolution of Released PAGA Claims.

dd.   "Parties" means Plaintiff and Defendant, collectively, and "Party" means either Plaintiff or Defendant.

ee.   "Preliminary Approval" means entry of the Court order granting preliminary approval of the Settlement Agreement.

ff.   "Released Class Claims" means all causes of action and factual or legal theories that were alleged in the Operative Complaint or reasonably could have been alleged based on the facts and legal theories contained in the Operative Complaint, for violations of the California Labor Code, including *inter alia* sections 201, 202, 203, 204, 226(a), 226.7, 246, 510, 512(a), 551, 552, 1174(d), 1194, 1197, 1197.1, 1198, 2800 and 2802, and Industrial Welfare Commission Wage Orders, including *inter alia*, Wage Orders 1-2001, 7-2001, 8-2001, 13-2001, 14-2001 and 16-2001, including all of the following claims for relief:  (a) failure to pay all and overtime wages due; (b) failure to provide proper meal periods, and to properly provide premium pay in lieu thereof; (c) failure to provide proper rest periods, and to properly provide premium pay in lieu thereof; (d) failure to pay all minimum wages due: (e) failure to pay all wages timely during employment; (f) failure to pay all wages timely at the time of termination; (g) failure to provide complete, accurate or properly formatted wage statements; (h) failure to provide an employee with written notice that sets forth the amount of paid sick leave available or paid time off leave an employer provides in lieu of sick leave; (i) failure to keep complete and accurate payroll records; (j) failure to reimburse business expenses; (k) unfair business practices that could have been premised on the claims, causes of action or legal theories of relief described above or any of the claims, causes of action, or legal theories of relief pleaded in the Operative Complaint; (k) any other claims or penalties under the wage and hour laws pleaded in the Action; and (l) all damages, penalties, interest, and other amounts recoverable under said claims, causes of action or legal theories of relief.

gg. "Released PAGA Claims" means all causes of action and factual or legal theories for civil penalties under the California Labor Code Private Attorneys General Act of 2004 against any of the Released Parties that were alleged in the Operative Complaint or reasonably could have been alleged based on the facts and legal theories contained in the PAGA Notices and Operative Complaint for violations of the California Labor Code, including *inter alia* sections 201, 202, 203, 204, 226(a), 226.7, 246, 510, 512(a), 551, 552, 1174(d), 1194, 1197, 1197.1, 1198, 2800 and 2802, and Industrial Welfare Commission Wage Orders, including *inter alia*, Wage Orders 1-2001, 7-2001, 8-2001, 13-2001, 14-2001 and 16-2001, including all of the following: (a) failure to pay all and overtime wages due; (b) failure to provide proper meal periods, and to properly provide premium pay in lieu thereof; (c) failure to provide proper rest periods, and to properly provide premium pay in lieu thereof; (d) failure to pay all minimum wages due: (e) failure to pay all wages timely during employment; (f) failure to pay all wages timely at the time of termination; (g) failure to provide complete, accurate or properly formatted wage statements; (h) failure to provide an employee with written notice that sets forth the amount of paid sick leave available or paid time off leave an employer provides in lieu of sick leave; (i) failure to keep complete and accurate payroll records; and (j) failure to reimburse business expenses.

hh. "Released Parties" means Nutrien Ltd., Nutrien Ag Solutions, Inc., Nutrien US LLC, Agrium U.S., Inc., Loveland Products, PCS Administration (USA), Inc. Crop Production Services, Inc., Western Farm Services, Inc., and each of their past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers.

ii. "Request for Exclusion" means a Class Member's written letter indicating a request to be excluded from the Class Settlement, which must: (a) contain the case name and number of the Action; (b) contain the Class Member's full name, signature, address, telephone number, and last four (4) digits of Social Security Number; (c) contain a clear written statement indicating that the Class Member seeks exclusion from the Class Settlement; and (d) be submitted by mail to the Settlement Administrator at the specified address, postmarked on or before the Response Deadline.

jj. "Response Deadline" means the deadline by which Class Members must submit

a Request for Exclusion, Objection, and/or Workweeks Dispute, which shall be the date that is forty-five (45) calendar days from the initial mailing of the Class Notice by the Settlement Administrator, unless the 45th day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open.  In the event that a Class Notice is re-mailed to a Class Member, the Response Deadline for that Class Member shall be extended by fifteen (15) calendar days from the initial Response Deadline.

kk.   "Settlement Administrator" means Phoenix Settlement Administrator, or any other third-party class action settlement administrator agreed to by the Parties and approved by the Court for purposes of administering this Settlement.  The Parties and their counsel each represent that they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.  Defendants and Defendants' counsel shall not enter into any contractual relationship with the Settlement Administrator.

ll.   "Settlement Administration Costs" means the costs payable from the Maximum Settlement Amount, subject to Court approval, to the Settlement Administrator for administering this Settlement, as set forth in Paragraph 13 below.

mm.   "Settlement Class Members" means all Class Members who do not submit a timely and valid Request for Exclusion.

nn.   "Workweeks" means the number of weeks each Class Member worked for any of the Defendants as a non-exempt employee in California during the Class Period, which will be calculated by Defendants by identifying, for each Class Member, each day during the Class Period he or she recorded time worked, and crediting him/her with one week worked for each calendar week during the Class Period in which he/she recorded any time worked

oo.   "Workweeks Dispute" means a Class Member's written letter disputing the pre-printed information on the Class Notice as to his or her Workweeks, which must: (a) contain the case name and number of the Action; (b) contain the Class Member's full name, signature, address, telephone number, and last four (4) digits of Social Security Number; (c) clearly state that the Class Member disputes of the number of Workweeks credited to him or her and what he or she contends is the correct number to be credited to him or her; (d) attach any documentation that he or she has to support the

dispute; and (e) be submitted by mail to the Settlement Administrator at the specified address, postmarked on or before the Response Deadline.

## **CLASS CERTIFICATION**

7.      For the purposes of this settlement only, the Parties stipulate to the certification of the Class.

8.      The Parties agree that certification for the purpose of settlement is not an admission that certification is proper under Rule 23 of the Federal Rules of Civil Procedure.  Should, for whatever reason, the Court not grant Final Approval, the Parties' stipulation to class certification as part of the Settlement shall become null and void *ab initio* and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be inappropriate in a non-settlement context.

## **TERMS OF AGREEMENT**

NOW, THEREFORE, in consideration of the mutual covenants, promises, and agreements set forth herein, the Parties agree, subject to the Court's approval, as follows:

9.      Amendment of the Complaint.  To implement the terms of the Settlement, Plaintiff, upon being granted leave, will file a Fourth Amended Class Action Complaint for Damages & Enforcement Under the Private Attorneys General Act, California Labor Code § 2698, *Et Seq*. ("Fourth Amended Complaint" or "Operative Complaint") in the Action, in substantially the form attached hereto as "**Exhibit A**," which *inter alia*, pleads additional factual allegations and claims, limits the scope of Class Members and PAGA Employees to those covered by the Settlement Agreement, and adds Crop Production Services, Inc. as a named defendant.  The Parties will execute and submit a stipulation regarding the filing of the Fourth Amended Complaint with the Court or will seek leave to file the Fourth Amended Complaint by way of the motion for preliminary approval, whichever approach facilitates obtaining preliminary approval the soonest.  The Court's acceptance of the Fourth Amended Complaint is a pre-condition for settlement.

10.      Funding and Disbursement of the Maximum Settlement Amount.  Within fifteen (15) calendar days after the Effective Date, the Settlement Administrator will provide the Parties with an accounting estimate of the amounts to be paid by Defendant pursuant to the terms of the Settlement and

establish a qualified settlement account for administration of the Settlement.  Within thirty (30) calendar days after the Effective Date, Defendant will make a one-time deposit of the Maximum Settlement Amount plus an amount sufficient for Employer's Taxes into the settlement account to be established by the Settlement Administrator.  Within seven (7) calendar days of the funding of the Maximum Settlement Amount and an amount sufficient for Employer Taxes, the Settlement Administrator will issue payments due under the Settlement and approved by the Court, as follows: (a) Individual Settlement Payments to Settlement Class Members; (b) Individual PAGA Payments to PAGA Employees; (c) LWDA Payment to the LWDA; (d) Enhancement Payment to Plaintiff; (e) Attorneys' Fees and Costs to Class Counsel; and (f) Settlement Administration Costs to itself (the Settlement Administrator).  The Settlement Administrator will also undertake filings and remittances in connection with the employee's share of taxes on the wages portion of Individual Settlement Shares and the Employer Taxes, that are necessary for administration of the Settlement.

11.  <u>Attorneys' Fees and Costs</u>.  Class Counsel will request and Defendants will not oppose attorneys' fees of up to thirty-five percent (35%) of the Maximum Settlement Amount (i.e., up to $1,575,00.00 if the Maximum Settlement Amount is $4,500,000.00) and reimbursement of actual costs and expenses associated with Class Counsel's litigation and settlement of the Action, supported by declaration, in an amount not to exceed Sixteen Thousand Dollars ($16,000), both of which will be paid from the Maximum Settlement Amount subject to Court approval.  These amounts will cover any and all work performed and any and all costs incurred by Class Counsel in connection with the litigation of the Action, including without limitation all work performed and costs incurred to date, and all work to be performed and all costs to be incurred in connection with obtaining the Court's approval of this Settlement Agreement, including any objections raised and any appeals necessitated by those objections.  Class Counsel shall be solely and legally responsible for correctly characterizing this compensation for tax purposes and for paying any taxes on the amounts received.  With respect to the Attorneys' Fees and Costs to Class Counsel, the Settlement Administrator may purchase an annuity to utilize United States Treasuries and bonds or utilize other attorney fee deferral vehicles, for Class Counsel and any additional expenses for doing so shall be paid separately by Class Counsel and shall not be included within the Settlement Administration Costs.  Defendants and Defendants' Counsel shall not be liable for any

expenses associated with the purchase or use of any attorney fee deferral vehicles for Class Counsel by the Settlement Administrator.  Even in the event that the Court reduces or does not approve the requested the Attorneys' Fees and Costs to Class Counsel, neither Plaintiff not Class Counsel shall have the right to revoke this Agreement, and it will remain binding.  Any portion of the Attorneys' Fees and Costs not awarded to Class Counsel shall be a part of the Net Settlement Amount for the benefit of Settlement Class Members.

12.     Enhancement Payment.  In recognition of his efforts and work in prosecuting the Action, Defendants agree not to oppose or impede any application or motion for an Enhancement Payment to Plaintiff in an amount up to Twelve Thousand Five Hundred Dollars ($12,500.00).  The Enhancement Payment, which will be paid from the Maximum Settlement Amount, subject to Court approval, will be in addition to his Individual Settlement Payment and Individual PAGA Payment that is to be paid pursuant to the Settlement.  The Settlement Administrator will issue an IRS Form 1099 to Plaintiff for the Enhancement Payment, and Plaintiff shall be solely and legally responsible for correctly characterizing this compensation for tax purposes and for paying any taxes on the amounts received. Should the Court not approve the Enhancement Payment to Plaintiff, or approve it in an amount that is less than that set forth above, Plaintiff shall not have the right to revoke this Agreement, and it will remain binding, and the difference between the amount approved by the Court (if any) and the amount allocated toward the Enhancement Payment will be part of the Net Settlement Amount for the benefit of Settlement Class Members.

13.     Settlement Administration Costs.  The Settlement Administrator will be paid for the reasonable costs of administration of the Settlement and distribution of payments under the Settlement, which is currently estimated not to exceed Twenty-Six Thousand Dollars ($26,000.00).  These costs, which will be paid from the Maximum Settlement Amount, subject to Court approval, will include, *inter alia*, translating the Class Notice to Spanish, printing, distributing, and tracking Class Notices and other documents for this Settlement, transmitting the CAFA Notice to relevant government agencies, calculating and distributing payments due under the Settlement, issuing of 1099 and W-2 IRS Forms and all required tax reporting, filings, withholdings, and remittances, providing necessary reports and declarations, and other duties and responsibilities set forth herein to process this Settlement, and as

requested by the Parties.  To the extent actual Settlement Administration Costs are greater than the estimated amount stated herein, such excess amount will be deducted from the Maximum Settlement Amount, subject to approval by the Court.  Any portion of the estimated, designated, and/or awarded Settlement Administration Costs which are not in fact required to fulfill payment to the Settlement Administrator to undertake the requirement settlement administration duties will be part of the Net Settlement Amount for the benefit of Settlement Class Members.  Plaintiff, Class Counsel, Defendants, and Defendants' Counsel shall not bear any responsibility for errors or omissions in the calculation or distribution of the Settlement payments or the development of the list of recipients of Settlement payments.

14.     PAGA Amount.  Subject to approval by the Court, the Parties agree that the amount of Five Hundred Thousand Dollars ($500,000.00) from the Maximum Settlement Amount will be allocated toward penalties under the Private Attorneys General Act, California Labor Code Section 2698, *et seq*. (i.e., the PAGA Amount), of which seventy-five percent (75%), or $375,000.00, will be paid to the LWDA (i.e., the LWDA Payment) and twenty-five percent (25%) or, $125,000.00, will be distributed to PAGA Employees (i.e., the PAGA Employee Amount) on a *pro rata* basis, based on Workweeks during the PAGA Period (i.e., the Individual PAGA Payment).

15.     Individual Settlement Share Calculations.  Individual Settlement Shares will be calculated and apportioned from the Net Settlement Amount based on the Class Members' number of Workweeks, as follows:

a.      After Preliminary Approval of the Settlement, the Settlement Administrator will divide the estimated Net Settlement Amount by the Workweeks of all Class Members to yield the "Estimated Workweek Value," and multiply each Class Member's individual Workweeks by the Estimated Workweek Value to yield his or her estimated Individual Settlement Share.

b.      After Final Approval of the Settlement, the Settlement Administrator will divide the final Net Settlement Amount by the Workweeks of all Settlement Class Members to yield the "Final Workweek Value," and multiply each Settlement Class Member's individual Workweeks by the Final Workweek Value to yield his or her Individual Settlement Share.

16.     Individual PAGA Payment Calculations. Individual PAGA Payments will be calculated

and apportioned from the PAGA Employee Amount based on the PAGA Employees' number of Workweeks during the PAGA Period as follows: The Settlement Administrator will divide the PAGA Employee Amount, i.e., 25% of the PAGA Amount, by the total number of Workweeks of all PAGA Employees during the PAGA Period to yield the "PAGA Workweek Value," and multiply each PAGA Employee's individual Workweeks during the PAGA Period by the PAGA Workweek Value to yield his or her Individual PAGA Payment.

17.    <u>Settlement Awards Do Not Trigger Additional Benefits.</u>  All payments made under the Settlement shall be deemed to be paid to the payee solely in the year in which such payments actually are issued to the payee.  It is expressly understood and agreed that payments made under this Settlement shall not in any way entitle Plaintiff, Settlement Class Members, or PAGA Employees to additional compensation or benefits under any new or additional compensation or benefits, or any bonus, contest or other compensation or benefit plan or agreement in place during the Class Period, nor will it entitle Plaintiff, Settlement Class Members, or PAGA Employees to any increased retirement, 401K benefits or matching benefits, or deferred compensation benefits (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the Class Period).

18.    <u>CAFA Notice</u>.

a.    Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C § 1715 ("CAFA"), within ten (10) calendar days after Plaintiff files this Settlement Agreement in the Court, Defendant, either on their own or through the Settlement Administrator, will cause the mailing of the CAFA Notice and exhibits to the relevant government authorities.  Defendant shall be responsible for the fees and costs associated with the Settlement Administrator's mailing of the CAFA Notice and exhibits to the relevant government authorities.

b.    Within ten (10) calendar days after this Settlement Agreement is filed in the Court, Defendants' Counsel will provide Class Counsel with written confirmation that they completed the mailing of the CAFA Notice and exhibits to the relevant government agencies in conformity with CAFA.

19.    <u>Notice of Proposed PAGA Settlement to LWDA</u>.

a.       Pursuant to Cal. Labor Code § 2699(l)(2), Class Counsel, either on their own or through the Settlement Administrator, will submit a copy of this Settlement Agreement to the California Labor Workforce and Development Agency at the same time that it is submitted to the Court for preliminary approval.  Class Counsel shall be responsible for the fees and costs associated with this submission.

b.       Class Counsel will confirm in their declaration in support of the Motion for Preliminary Approval that this Settlement Agreement has been submitted to the California Labor and Workforce Development Agency and that the requirements of Cal. Labor Code § 2699(l)(2) have been satisfied.

20.    Delivery of the Class List.   Within twenty-one (21) calendar days of Preliminary Approval, Defendant will provide the Class List to the Settlement Administrator.

21.    Notice by First-Class U.S. Mail.

a.       Within fourteen (14) calendar days after receiving the Class List from Defendant, the Settlement Administrator will perform a search based on the National Change of Address Database or any other similar services available, such as provided by Experian, for information to update and correct for any known or identifiable address changes, and will mail a Class Notice in English and Spanish (in the form attached as **Exhibit B** to this Settlement Agreement) to all Class Members via First-Class U.S. Mail, using the most current, known mailing addresses identified by the Settlement Administrator.

b.       With respect to Class Notices that are returned as undeliverable on or before the Response Deadline, the Settlement Administrator will search for an alternate address by way of skip-trace and re-mail the Class Notice within five (5) calendar days.

c.       Dispute Regarding Workweeks.  The Class Notice will include the procedure by which a Class Member may dispute the number of Workweeks allocated to him or her by submitting a timely and valid Workweeks Dispute.  The date of the postmark on the return mailing envelope will be the exclusive means to determine whether a dispute has been timely submitted.  Absent evidence rebutting the accuracy of Defendants' records and data as they pertain to the number of Workweeks to be credited to a disputing Class Member, Defendants' records will be presumed correct and

1  determinative of the dispute.  However, if a Class Member produces information and/or documents to

2  the contrary, the Settlement Administrator will evaluate the materials submitted by the Class Member

3  and the Settlement Administrator will resolve and determine the number of eligible Workweeks that the

4  disputing Class Member should be credited with under the Settlement.  The Settlement Administrator's

5  decision on such disputes will be final and non-appealable.

6      22.    Settlement Checks.  The Settlement Administrator will be responsible for undertaking

7  appropriate deductions, required tax reporting, and issuing the Individual Settlement Payments by way

8  of check to the Settlement Class Members and the Individual PAGA Payments by way of check to the

9  PAGA Employees in accordance with this Settlement Agreement. When issuing payments, the

10  Settlement Administrator may combine the Individual Settlement Payment and Individual PAGA Payment

11  into one check if the intended recipient for both payments is one individual.  Each Individual Settlement

12  Payment and Individual PAGA Payment check will be valid and negotiable for one hundred and eighty

13  (180) calendar days from the date the checks are issued, and thereafter, shall be cancelled.  All funds

14  remaining in the Qualified Settlement Fund in connection with cancelled checks shall be distributed to

15  the Controller of the State of California to be held pursuant to the Unclaimed Property Law, California

16  Civil Code § 1500 et seq., for the benefit of those Settlement Class Members who did not cash, deposit,

17  or otherwise negotiate their checks until such time that they claim their property.  The Settling Parties

18  agree that this disposition results in no "unpaid residue" under California Civil Procedure Code § 384,

19  as the entire Net Settlement Amount will be paid out to Settlement Class Members, whether or not they

20  all cash their Settlement Checks.  Therefore, Defendants will not be required to pay any interest on said

21  amounts.  The Settlement Administrator shall undertake amended and/or supplemental tax filings and

22  reporting, required under applicable local, state, and federal tax laws, that are necessitated due to the

23  cancellation of any Individual Settlement Payment or Individual PAGA Payment checks.  Settlement

24  Class Members whose Individual Settlement Payment checks are cancelled, shall, nevertheless, be bound

25  by this Settlement Agreement and the Final Approval Order and Judgment will have claim preclusive

26  impact with respect to them and all Settlement Class Members with respect to the Released Class Claims.

27  The Final Approval Order and Judgment will have claim preclusive impact on the PAGA Employees with

28  respect to the Released PAGA Claims irrespective of whether their Individual PAGA Payment checks are

1    cancelled.

2        23.    <u>Procedures for Requesting Exclusion from the Class Settlement</u>.  Any Class Member

3    wishing to be excluded from the Class Settlement must submit a Request for Exclusion to the Settlement

4    Administrator, by mail, on or before the Response Deadline.  The date of the postmark on the return

5    mailing envelope will be the exclusive means to determine whether a Request for Exclusion has been

6    timely submitted.  The Settlement Administrator will certify jointly to Class Counsel and Defendants'

7    Counsel the Requests for Exclusion that were timely submitted, and also identify the individuals who

8    have submitted a timely and valid Request for Exclusion in a declaration that is to be filed with the

9    Court in advance of the Final Approval Hearing.  Any Class Member who submits a timely and valid

10   Request for Exclusion is prohibited from making any objection to the Class Settlement.  Any Class

11   Member who submits a timely and valid Request for Exclusion will not be bound by the Class Settlement

12   and will not be issued an Individual Settlement Payment.  All PAGA Employees will be issued an

13   Individual PAGA Payment, irrespective of whether they submit a Request for Exclusion and the Final

14   Approval Order and Judgment will have claim preclusive impact on the PAGA Employees with respect

15   to the Released PAGA Claims.

16       24.    <u>Procedures for Objecting to the Class Settlement</u>.  To object to the Class Settlement,

17   Class Members who have not opted out of the Class Settlement (i.e., Settlement Class Members) must

18   submit a timely and complete Objection to the Settlement Administrator, by mail, on or before the

19   Response Deadline.  The Objection must be signed by the Settlement Class Member and contain all

20   information required by this Settlement Agreement.  The postmark date will be deemed the exclusive

21   means for determining that the Objection is timely.  At no time will any of the Parties or their counsel

22   seek to solicit or otherwise encourage Class Members to object to the Settlement Agreement or appeal

23   from the Final Approval Order and Judgment.  Settlement Class Members may also present their

24   objection orally at the Final Approval Hearing, irrespective of whether they submit an Objection.  The

25   Settlement Administrator will certify jointly to Class Counsel and Defendants' Counsel the Objections

26   that were timely submitted, and also attach them as exhibits to a declaration that is to be filed with the

27   Court in advance of the Final Approval Hearing.

28       25.    <u>Reports by the Settlement Administrator Regarding Settlement Administration</u>.  The

Settlement Administrator will provide Defendants' Counsel and Class Counsel a weekly report which certifies: (a) the number of Class Members who have submitted a Workweeks Dispute; (b) the number of Class Members who have submitted timely and valid Requests for Exclusion or timely and complete Objections; and (c) the number of undeliverable and re-mailed Class Notices.   Additionally, the Settlement Administrator will provide to counsel for both Parties any updated reports regarding the administration of the Settlement Agreement as needed or requested, and immediately notify the Parties when it receives a request from an individual or any other entity regarding inclusion in the Class and/or Settlement.

26. <u>Certification of Completion</u>. Upon completion of administration of the Settlement, the Settlement Administrator will provide a written declaration under oath to certify such completion to the Court and counsel for all Parties.

27. <u>Treatment of Individual Settlement Payments and Individual PAGA Payments</u>.   Each Individual Settlement Share will be allocated as follows: twenty percent (20%) wages and eighty percent (80%) penalties, interest, and non-wage damages.   The portion allocated to wages will be reported on an IRS Form W-2 and the portions allocated to penalties, interest, and non-wage damages will be reported on an IRS Form-1099 by the Settlement Administrator.   The Settlement Administrator will withhold the employee's share of taxes and withholdings with respect to the wages portion of the Individual Settlement Shares, and issue checks to Settlement Class Members for their Individual Settlement Payments (i.e., payment of their Individual Settlement Share net of these taxes and withholdings).   The Employer Taxes will be paid separately and in addition to the Maximum Settlement Amount.   Each Individual PAGA Payment will be allocated as one hundred percent (100%) penalties and will be reported on an IRS Form-1099 (if applicable) by the Settlement Administrator.

28. <u>Administration of Taxes by the Settlement Administrator</u>.   The Settlement Administrator will be responsible for issuing to Plaintiff, Settlement Class Members, PAGA Employees, and Class Counsel any W-2, 1099, or other tax forms as may be required by law for all amounts paid pursuant to this Settlement Agreement.   The Settlement Administrator will also be responsible for forwarding all payroll taxes, contributions, and withholdings to the appropriate government authorities.

29. <u>Tax Liability</u>.   Plaintiff, Class Counsel, Defendants, and Defendants' Counsel do not

intend anything contained in this Settlement Agreement to constitute advice regarding taxes or taxability, nor shall anything in this Settlement Agreement be relied on as such.  Plaintiff, Settlement Class Members, and PAGA Employees understand and agree that, except for Defendant's payment of Employer Taxes, they will be solely responsible for correctly characterizing any compensation received under the Settlement on his/her personal income tax returns and paying any and all taxes due for any and all amounts paid to them under the Settlement.

30.    Circular 230 Disclaimer.  EACH PARTY TO THIS SETTLEMENT AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO THIS SETTLEMENT AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS SETTLEMENT AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR WILL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS SETTLEMENT AGREEMENT, (B) HAS NOT ENTERED INTO THIS SETTLEMENT AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED

BY THIS SETTLEMENT AGREEMENT.

31.   <u>No Prior Assignments</u>.  The Parties and their counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right herein released and discharged.

32.   <u>Release of Claims by Settlement Class Members and the State of California</u>.

a.   <u>Class Settlement Release</u>. Upon the Effective Date and full funding of the Maximum Settlement Amount, Plaintiff and all Class Members who do not submit a timely and valid Request for Exclusion (i.e., Settlement Class Members) will be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged the Released Parties of all Released Class Claims whether known or unknown.  However, to be clear, the scope of the release is limited to the Released Class Claims.  The period of this release shall extend to the limits of the Class Period.  The res judicata effect of the Final Approval Order and Judgment will be the same as that of this release. Defendants shall be entitled to a release of Released Class Claims which occurred during the Class Period only during such time that the Settlement Class Member was classified as non-exempt, and expressly excluding all other claims, including claims for vested benefits, wrongful termination, unemployment insurance, disability, social security, workers' compensation, claims while classified as exempt, and claims outside of the Class Period.  By virtue of this Agreement, Plaintiff and the Settlement Class Members shall be deemed to have, and by operation of the final judgment approved by the Court, shall have, fully, finally, and forever settled and released all of the Released Class Claims. The Parties understand and specifically agree that the scope of the release described in this Paragraph is a material part of the consideration for this Agreement; was critical in justifying the agreed upon economic value of this settlement and without it Defendant would not have agreed to the consideration provided; and is narrowly drafted and necessary to ensure that Defendants are obtaining peace of mind regarding the resolution of claims that were or could have been alleged based on the facts, causes of action, and legal theories contained in the Operative Complaint.

b.   <u>PAGA Settlement Release</u>. Upon the Effective Date and full funding of the Maximum Settlement Amount, Plaintiff and the State of California will be deemed to have fully, finally,

and forever released, settled, compromised, relinquished, and discharged the Released Parties of all Released PAGA Claims pertaining to Plaintiff and the PAGA Employees, whether known or unknown. However, to be clear, the scope of the release is limited to the Released PAGA Claims.  The period of this release shall extend to the limits of the PAGA Period.  The res judicata effect of the Final Approval Order and Judgment will be the same as that of this release of Released PAGA Claims.  Defendants shall be entitled to a release of Released PAGA Claims which occurred during the PAGA Period only during such time that PAGA Employees were classified as non-exempt, and expressly excluding all other claims, including claims for vested benefits, wrongful termination, unemployment insurance, disability, social security, workers' compensation, claims while classified as exempt, and claims outside of the PAGA Period.  By virtue of this Agreement, Plaintiff and the State of California shall be deemed to have, and by operation of the final judgment approved by the Court, shall have, fully, finally, and forever settled and released all of the Released PAGA Claims. The Parties understand and specifically agree that the scope of the release described in this Paragraph is a material part of the consideration for this Agreement; was critical in justifying the agreed upon economic value of this settlement and without it Defendant would not have agreed to the consideration provided; and is narrowly drafted and necessary to ensure that Defendants are obtaining peace of mind regarding the resolution of claims that were or could have been alleged based on the facts, causes of action, and legal theories contained in the Operative Complaint.

33.   <u>General Release of Claims by Plaintiff</u>. In addition, upon the Effective Date and full funding of the Maximum Settlement Amount, Plaintiff will be deemed to have fully released and discharged the Released Parties of and from all claims arising from his employment with Defendants, separation of employment from Defendants, and any acts that have or could have been asserted in any legal action or proceeding against Defendants, whether known or unknown, arising under any federal, state, or local law, or statute, including, *inter alia*, those arising under the California Labor Code, Fair Labor Standards Act, Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, Employee Retirement Income Security Act, National Labor Relations Act, California Corporations Code, California Business and Professions Code, California Fair Employment and Housing Act, California Constitution (all as amended), and law of contract and tort, as well as for discrimination, harassment, retaliation,

wrongful termination, lost wages, benefits, other employment compensation, emotional distress, medical expenses, other economic and non-economic damages, attorney fees, and costs, arising on or before the date of execution of the Settlement Agreement.  With respect to those claims released by Plaintiff in an individual capacity, Plaintiff acknowledges and waives any and all rights and benefits available under California Civil Code section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiff understands and agrees that claims or facts in addition to or different from those which are now known or believed by him to exist may hereafter be discovered.  It is Plaintiff's intention to settle fully and release all claims he now has against the Released Parties, whether known or unknown, suspected or unsuspected, upon the Effective Date and full funding of the Maximum Settlement Amount.  Notwithstanding the above, the general release by Plaintiff shall not extend to claims for workers' compensation benefits, claims for unemployment benefits, or other claims that may not be released by law.

34.     Plaintiff represents and warrants that his employment with any of Defendants ended before November 31, 2019, and that, other than the Action, he has not filed (i) any charge or complaint against any of Defendants with any administrative or governmental agency[1], or (ii) any lawsuit or legal action against any of Defendants in any court.  Plaintiff understands that this representation is a material element of this Agreement and that, had he not provided this representation, Defendant would have required additional terms to this Agreement in order to obtain an enforceable waiver of any claims he might have under the Age Discrimination in Employment Act, as amended by the Older Workers' Benefit Protection Act of 1990, 29 U.S.C. § 621 *et seq.*

35.     <u>Duties of the Parties with Respect to Obtaining Preliminary Approval of the Settlement</u>.  Upon execution of this Settlement Agreement, Plaintiff shall promptly obtain a hearing date for Plaintiff's motion for preliminary approval of the Settlement, which Plaintiff and Class Counsel will be

---

[1] With the exception of the additional follow-up correspondence Plaintiff sent to the LWDA on June 13, 2023

responsible for drafting, and submit this Settlement Agreement to the Court in support of said motion. Class Counsel will provide Defendants' Counsel a draft of the preliminary approval motion for review and approval at least three (3) court days before filing it with the Court. Defendants agree not to oppose the motion for preliminary approval of the Settlement consistent with this Settlement Agreement. Defendants agree to provide Class Counsel a draft of any required declarations in support of Plaintiff's motion for preliminary approval at least three (3) court days before Plaintiff's deadline to file the motion for preliminary approval. Said motion shall apply to the Court for the entry of an order ("Preliminary Approval Order"), which shall be mutually agreed upon by the Parties, seeking the following:

      a.      Conditionally certifying the Class for settlement purposes only;

      b.      Granting Preliminary Approval of the Settlement;

      c.      Preliminarily appointing Plaintiff as representative of the Class;

      d.      Preliminarily appointing Class Counsel as counsel for the Class;

      e.      Approving, as to form and content, the mutually-agreed upon and proposed Class Notice and directing its mailing to the Class by First-Class U.S. Mail;

      f.      Approving the manner and method for Class Members to request exclusion from or object to the Class Settlement as contained herein and within the Class Notice; and

      g.      Scheduling a Final Approval Hearing at which the Court will determine whether the Settlement should be finally approved as fair, reasonable and adequate as to the Settlement Class Members and PAGA Employees.

      36.    <u>Duties of the Parties with Respect to Obtaining Final Approval of the Settlement</u>. After the Response Deadline, and with the Court's permission, a Final Approval Hearing will be conducted to determine whether Final Approval of the Settlement should be granted, along with the amounts properly payable for (a) Individual Settlement Payments; (b) Individual PAGA Payments; (c) LWDA Payment; (d) Attorneys' Fees and Costs; (e) Enhancement Payment; and (f) Settlement Administration Costs. The Final Approval Hearing will not be held earlier than thirty (30) calendar days after the Response Deadline. Plaintiff and Class Counsel will be responsible for drafting the motion seeking Final Approval of the Settlement. Class Counsel will provide Defendants' Counsel a draft of the final approval motion for review and approval at least three (3) court days before filing it with the Court. By way of said

motion, Plaintiff will apply for the entry of the mutually-agreed-upon proposed order and judgment ("Final Approval Order and Judgment"), which will provide for, in substantial part, the following:

      a.     Approval of the Settlement as fair, reasonable, and adequate, and directing consummation of its terms and provisions;

      b.     Certification of the Settlement Class;

      c.     Approval of the application for Attorneys' Fees and Costs to Class Counsel;

      d.     Approval of the application for Enhancement Payment to Plaintiff;

      e.     Directing Defendant to fund all amounts due under the Settlement Agreement and ordered by the Court; and

      f.     Entering judgment in this Action, while maintaining continuing jurisdiction to implement the Settlement, in conformity with the Settlement Agreement.

      37.     <u>Termination or Revocation of Settlement</u>.

      a.     If ten percent (10%) or more of the Class Members submit timely and valid Requests for Exclusion, Defendant may elect to rescind the Settlement Agreement by way of writing that is provided to Class Counsel within ten (10) calendar days after the Settlement Administrator notifies the Parties of the total number of timely and valid Requests for Exclusion received by the Response Deadline. If Defendant exercises this option, Defendant shall pay any costs of settlement administration incurred by the Settlement Administrator up until the date that Defendant gives notice to the Settlement Administrator that it is exercising its right to rescind the Settlement pursuant to this Paragraph.

      b.     If the Court fails or refuses to issue the Final Approval Order and Judgment or fails to approve any material condition of this Settlement Agreement which effects a fundamental change of the Settlement Agreement (unless explicitly excepted herein), by way of writing that is provided to the other Party within ten (10) calendar days thereof, the entire Settlement Agreement shall be rendered voidable and unenforceable as to all Parties herein at the option of either Party.

      38.     <u>Effects of Termination of the Settlement</u>. Termination of the Settlement Agreement shall have the following effects:

      a.     The Settlement Agreement shall be void and shall have no force or effect, and no Party shall be bound by any of its terms;

b.      In the event the Settlement Agreement is terminated, Defendants shall have no obligation to make any payments to any Party, Class Member, or attorney, except that the terminating Party shall pay the Settlement Administrator for services rendered up to the date the Settlement Administrator is notified that the Settlement has been terminated;

c.      The Preliminary Approval Order, Final Approval Order and Judgment, including any order certifying the Class, shall be vacated;

d.      The Settlement Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties or Defendants, all of whom shall be restored to their respective positions in the Action prior to the execution of the Settlement Agreement;

e.      Neither this Settlement Agreement, nor any ancillary documents, actions, statements or filings in furtherance of the Settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the Action or any other action for any purpose whatsoever; and

f.      Any documents generated to bring the Settlement into effect, will be null and void, and any order or judgment entered by the Court in furtherance of this Settlement Agreement will likewise be treated as void from the beginning.

g.      If the Settlement is voided or fails for any reason other than revocation by Defendants, pursuant to Paragraph 36(a), above, any costs incurred by the Settlement Administrator shall be borne equally by the Parties.

39.   <u>Escalator Clause</u>.  Defendant represents that, during the period from October 6, 2016 through February 7, 2023, the Class Members worked, collectively, approximately 266,068 Workweeks. If it is determined that the total number of Workweeks during the period from October 6, 2016 through February 7, 2023 exceed 266,068 by more than five percent (5%) (i.e. exceeds 279,371), then, the Maximum Settlement Amount will be increased by 1% for every 1% increase in workweeks over the 5% threshold (e.g., if the threshold of 279,371 Workweeks is exceeded by 1%, the Maximum Settlement Amount will increase by 1%).

40.   <u>Continued Jurisdiction</u>.   After entry of judgment pursuant to the Settlement, the Court

will have continuing jurisdiction, for purposes of addressing: (a) the interpretation and enforcement of the terms of the Settlement, (b) settlement administration matters, and (c) such post-judgment matters as may be appropriate under court rules or as set forth in this Settlement Agreement.

41.   Exhibits Incorporated by Reference.  The terms of this Settlement Agreement include the terms set forth in any attached exhibits, which are incorporated by this reference as though fully set forth herein.  Any exhibits to this Settlement Agreement are an integral part of the Settlement.

42. Limitation on Publicity.  Plaintiff and Class Counsel agree not to disclose or publicize the Settlement, including the fact of the Settlement, its terms or contents, and the negotiations underlying the Settlement, in any manner or form, directly or indirectly, to any person or entity, except potential class members and as shall be contractually required to effectuate the terms of the Settlement.  For the avoidance of doubt, this Paragraph means Plaintiff and Class Counsel agree not to issue press releases, communicate with, or respond to any media or publication entities, publish information in manner or form, whether printed or electronic, on any medium or otherwise communicate, whether by print, video, recording or any other medium, with any person or entity concerning the Settlement, including the fact of the Settlement, its terms or contents and the negotiations underlying the Settlement, except as shall be contractually required to effectuate the terms of the Settlement.  However, for the limited purpose of allowing Class Counsel to prove adequacy as class counsel in other actions, Class Counsel may disclose the name of the Parties and Defendants in the Action and the venue/case number of the Action (but not any other settlement details) for such purposes.  Furthermore, Plaintiff and Class Counsel will undertake any and all disclosures and submissions required to be made to the LWDA in conformity with PAGA.

43.   Entire Agreement.  This Settlement Agreement and any attached exhibits constitute the entirety of the Parties' settlement terms.  No other prior or contemporaneous written or oral agreements may be deemed binding on the Parties.  The Parties expressly recognize California Civil Code section 1625 and California Code of Civil Procedure section 1856(a), and any other provisions of state or federal law, which provide that a written agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence, and the Parties agree that no such extrinsic oral or written representations or terms will modify, vary or contradict the terms of this Settlement Agreement.  This Settlement Agreement contains the entire agreement between the Parties relating to the settlement and

transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein.

44.     <u>Interim Stay of Proceedings</u>.  The Parties agree to hold in abeyance all proceedings in the Action (including, and not limited to, the deadline to bring the Action to trial under California Code of Civil Procedure section 583.310), except such proceedings necessary to implement and complete the Settlement Agreement, pending the Final Approval Hearing to be conducted by the Court.

45.     <u>Amendment</u>. Prior to the filing of the motion for preliminary approval of the Settlement, the Parties may not amend or modify any provision of this Settlement Agreement except by written agreement signed by counsel for all Parties.  After the filing of the motion for preliminary approval of the Settlement, the Parties may not amend or modify any provision of this Settlement Agreement except by written agreement signed by counsel for all of the Parties and subject to Court approval.  A waiver or amendment of any provision of this Settlement Agreement will not constitute a waiver of any other provision.  Material terms of this agreement may only we waived subject to Court approval.

46.     <u>Authorization to Enter into Settlement Agreement</u>.  Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Settlement Agreement and to take all appropriate actions required or permitted to be taken by such Parties pursuant to this Settlement Agreement to effectuate its terms and to execute any other documents required to effectuate the terms of this Settlement Agreement.  The Parties warrant that they understand and have full authority to enter into this Settlement Agreement, and further intend that this Settlement Agreement will be fully enforceable and binding on all Parties, and agree that it will be admissible and subject to disclosure in any proceeding to enforce its terms, notwithstanding any mediation confidentiality provisions that otherwise might apply under state or federal law.

47.     <u>Signatories</u>.  It is agreed that because the members of the Class are so numerous, it is impossible or impractical to have each Class Member execute this Settlement Agreement.  The Class Notice will advise all Class Members of the binding nature of the Class Settlement as to the Settlement Class Members, and the release shall have the same force and effect as if this Settlement Agreement were executed by each Settlement Class Member.

48.     Binding on Successors and Assigns.  This Settlement Agreement will be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

49.     California Law Governs.  All terms of this Settlement Agreement and attached exhibits hereto will be governed by and interpreted according to the laws of the State of California.

50.     Execution and Counterparts.  This Settlement Agreement is subject only to the execution of all Parties.  However, the Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them, including facsimile, electronic, and scanned copies of the signature page, will be deemed to be one and the same instrument.

51.     Acknowledgment that the Settlement is Fair and Reasonable.  The Parties believe this Settlement Agreement is a fair, adequate, and reasonable settlement of the Action, Released Class Claims, and Released PAGA Claims, and have arrived at this Settlement after arm's-length negotiations and in the context of adversarial litigation, taking into account all relevant factors, present and potential. The Parties further acknowledge that they are each represented by competent counsel and that they have had an opportunity to consult with their counsel regarding the fairness and reasonableness of this Settlement Agreement.  In addition, if necessary to obtain approval of the Settlement, the Mediator may execute a declaration supporting the Settlement and the reasonableness of the Settlement and the Court may, in its discretion, contact the Mediator to discuss the Settlement and whether or not the Settlement is objectively fair and reasonable.

52.     Invalidity of Any Provision.   Before declaring any provision of this Settlement Agreement invalid, the Court will first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedents so as to find all provisions of this Settlement Agreement valid and enforceable.

53.     Plaintiff's Cooperation.  Plaintiff agrees to sign this Settlement Agreement and, by signing this Settlement Agreement, is hereby bound by the terms herein and agrees to fully cooperate to implement the Settlement.

54.     Non-Admission of Liability.  The Parties enter into this Settlement Agreement to resolve the dispute that has arisen between them and to avoid the burden, expense and risk of continued litigation.  In entering into this Settlement Agreement, Defendants do not admit, and specifically deny,

that they have violated any state, federal, or local law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations or legal requirements; breached any contract; violated or breached any duty; engaged in any misrepresentation or deception; or engaged in any other unlawful conduct with respect to its employees.  Neither this Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendants of any such violations or failures to comply with any applicable law.  Except as necessary in a proceeding to enforce the terms of this Settlement Agreement, this Settlement Agreement and its terms and provisions shall not be offered as evidence in any action or proceeding to establish any liability or admission on the part of Defendants or to establish the existence of any condition constituting a violation of, or a non-compliance with state, federal, local or other applicable law.

55.   <u>Captions</u>.  The captions and paragraph numbers in this Settlement Agreement are inserted for the reader's convenience, and in no way define, limit, construe or describe the scope or intent of the provisions of this Settlement Agreement.

56.   <u>Mutual Preparation</u>.  The Parties have had a full opportunity to negotiate the terms and conditions of this Settlement Agreement.  Accordingly, this Settlement Agreement will not be construed more strictly against one Party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arms-length negotiations between the Parties, all Parties have contributed equally to the preparation of this Settlement Agreement.

57.   <u>Representation by Counsel</u>.  The Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Settlement Agreement, and that this Settlement Agreement has been executed with the consent and advice of counsel, and reviewed in full.

58.   <u>All Terms Subject to Final Court Approval</u>.  All amounts and procedures described in this Settlement Agreement herein will be subject to final Court approval.

59.   <u>Notices.</u>  All notices, demands, and other communications to be provided concerning this Settlement Agreement shall be in writing and delivered by overnight mail at the addresses set for below, or such other addresses as either Party may designate in writing from time to time:

<u>To Plaintiff and Class Counsel</u>:

Arby Aiwazian, Esq.
Joanna Ghosh, Esq.
Annabel Blanchard, Esq.
**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

<u>To Defendant</u>:

Christopher W. Decker
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
400 South Hope Street, Suite 1200
Los Angeles, California 90071

60.   <u>Final Approval Order and Judgment</u>.  The Parties shall provide the Settlement Administrator with a copy of the Final Approval Order and Judgment once it is entered by the Court, and the Settlement Administrator shall post the Final Approval Order and Judgment on its website for sixty (60) calendar days.  No individualized notice of the Final Approval Order and Judgment to the Class will be required.

61.   <u>Cooperation and Execution of Necessary Documents</u>.  All Parties and their counsel will cooperate with each other in good faith and use their best efforts to implement the Settlement, including and not limited to, executing all documents to the extent reasonably necessary to effectuate the terms of this Settlement Agreement.  If the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement Agreement, the Parties may seek the assistance of the Mediator and then the Court to resolve such disagreement.

62.   <u>No Unalleged Claims</u>. Plaintiff and Class Counsel represent that they, as of the date of execution of this Settlement, are not currently aware of any: (a) unalleged claims in addition to, or different from, those which are finally and forever settled and released against the Released Parties by this Settlement; and (b) unalleged facts or legal theories upon which any claims or causes of action could be brought against Defendants, except such facts and theories specifically alleged in the Operative Complaint in the Action.  Plaintiff and Class Counsel further represent that, other than the Action, they have no current intention of asserting any other claims against Defendants in any judicial or administrative forum,

and that they do not currently know of or represent any persons who have expressed any interest in pursuing litigation or seeking any recovery against Defendants. The Parties acknowledge, understand, and agree that the representations described in this Paragraph are essential to the Agreement and that this Agreement would not have been entered into were it not for these representations.

**IN WITNESS WHEREOF**, the Parties hereto knowingly and voluntarily executed this Joint Stipulation of Class and PAGA Settlement and Release between Plaintiff and Defendants:

**IT IS SO AGREED.**

**PLAINTIFF BOBBY GRAYSON, III**

Dated: _____, 2023

_____
Bobby Grayson, Plaintiff

**DEFENDANT NUTRIEN AG SOLUTIONS, INC.**

Dated: 07/13/2023_____, 2023

_____

Full Name: ___Anne Folk_____

Title: __VP, HR, Nutrien Ag Solutions____
On behalf of Nutrien AG Solutions, Inc.

**APPROVED AS TO FORM**

**LAWYERS *for* JUSTICE, PC**

Dated: _____July 14____, 2023

_____
Arby Aiwazian
Joanna Ghosh
Annabel Blanchard
*Attorneys for* Plaintiff Bobby Grayson, III and Proposed Class Counsel

**OGLETREE,   DEAKINS,   NASH,   SMOAK   & STEWART, P.C.**

Dated: ___July 13, 2023____, 2023

_____
Christopher W. Decker
*Attorneys for* Defendant Nutrien Ag Solutions, Inc.

and that they do not currently know of or represent any persons who have expressed any interest in pursuing litigation or seeking any recovery against Defendants.  The Parties acknowledge, understand, and agree that the representations described in this Paragraph are essential to the Agreement and that this Agreement would not have been entered into were it not for these representations.

**IN WITNESS WHEREOF**, the Parties hereto knowingly and voluntarily executed this Joint Stipulation of Class and PAGA Settlement and Release between Plaintiff and Defendants:

**IT IS SO AGREED.**

**PLAINTIFF BOBBY GRAYSON, III**

Dated: 06/28/2023 _____, 2023

Bobby Grayson, Plaintiff

**DEFENDANT NUTRIEN**

Dated: _____, 2023       _____

Full Name: _____

Title: _____
On behalf of Nutrien

**DEFENDANT NUTRIEN AG SOLUTIONS, INC.**

Dated: _____, 2023       _____

Full Name: _____

Title: _____
On behalf of Nutrien AG Solutions, Inc.

**DEFENDANT CROP PRODUCTION SERVICES, INC.**

Dated: _____, 2023       _____

Full Name: _____

Title: _____
On behalf of Crop Production Services, Inc.

30

JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE

Arby Aiwazian (Cal. State Bar No. 269827)
    *arby@calljustice.com*
Joanna Ghosh (Cal. State Bar No. 272479)
    *joanna@calljustice.com*
Annabel Blanchard (Cal. State Bar No. 258135)
    *annabel@calljustice.com*
**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Tel: (818) 265-1020 / Fax: (818) 265-1021

*Attorneys for* Plaintiff

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BOBBY GRAYSON, III, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act; <br><br> Plaintiff, <br><br> vs. <br><br> NUTRIEN, a Colorado corporation; NUTRIEN AG SOLUTIONS, INC., an unknown business entity; WESTERN FARM SERVICE, INC., an unknown business entity; CROP PRODUCTION SERVICES, INC.; and DOES 2 through 100, inclusive, <br><br> Defendants. | Case No.:   1:21-cv-00986-ADA-BAM <br><br> Honorable Barbara A. McAuliffe <br><br> **FOURTH AMENDED CLASS ACTION COMPLAINT FOR DAMAGES & ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ.** <br><br> (1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); <br> (2) Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums); <br> (3) Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums); <br> (4) Violation of California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages); <br> (5) Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid); <br> (6) Violation of California Labor Code § 204 (Wages Not Timely Paid During Employment); <br> (7) Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements); <br> (8) Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses); <br> (9) Violation of California Business & |

Professions Code §§ 17200, et seq.
(10) Violation of California Labor Code § 2698, et seq. (California Labor Code Private Attorneys General Act of 2004)

**DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff BOBBY GRAYSON, III ("Plaintiff"), individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act ("PAGA"), and alleges as follows:

## JURISDICTION AND VENUE

1.      This class action was originally brought in the Superior Court for the County of Tulare pursuant to the California Code of Civil Procedure section 382. The monetary damages and restitution sought by Plaintiff exceeds the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial.

2.      The Superior Court for the County of Tulare has jurisdiction over this action pursuant to the California Constitution, Article VI, Section 10, which grants the superior court "original jurisdiction in all other causes" except those given by statute to other courts.  The statutes under which this action is brought do not specify any other basis for jurisdiction.

3.      On June 21, 2021, Defendant Nutrien Ag Solutions, Inc. removed this action to this court pursuant to 28 U.S.C. §§ 1332, 1441(a), 1456 and 1453, alleging that federal subject matter jurisdiction exists because (i) Plaintiff and Defendant Nutrien Ag Solutions, Inc. are citizens of different states, (ii) there are at least 100 class members in all proposed plaintiff classes, and (iii) the combined claims of all class members exceed $5,000,000, exclusive of interests and costs.

4.      The Superior Court for the County of Tulare and the Eastern District of California have jurisdiction over Defendants because, upon information and belief, Defendants are citizens of California, have sufficient minimum contacts in

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

California, or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by California courts consistent with traditional notions of fair play and substantial justice.

5.      Venue is proper in the Superior Court for the County of Tulare and in the Eastern District of California because, upon information and belief, Defendants maintain offices, have agents, employ individuals, and/or transact business in the State of California, County of Tulare.  The majority of acts and omissions alleged herein relating to Plaintiff and the other class members took place in the State of California, including the County of Tulare.

## **PARTIES**

6.      Plaintiff BOBBY GRAYSON, III is an individual residing in the State of California.

7.      Defendant NUTRIEN, at all times herein mentioned, was and is, upon information and belief, a Colorado corporation and, at all times herein mentioned, an employer whose employees are engaged throughout the State of California, including the County of Tulare.

8.      Defendant NUTRIEN AG SOLUTIONS, INC., at all times herein mentioned, was and is, upon information and belief, an employer whose employees are engaged throughout the State of California, including the County of Tulare.

9.      Defendant WESTERN FARM SERVICE, INC., at all times herein mentioned, was and is, upon information and belief, an employer whose employees are engaged throughout the State of California, including the County of Tulare.

10.     Defendant CROP PRODUCTION SERVICES, INC., at all time herein mentioned, was and is, upon information and belief, an employer whose employees are engaged throughout the State of California, including the County of Tulare.

11.     At all relevant times, Defendants NUTRIEN, NUTRIEN AG SOLUTIONS, INC., WESTERN FARM SERVICE, INC., and CROP PRODUCTION SERVICES, INC. were the "employer" of Plaintiff within the

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   meaning of all applicable California laws and statutes.

2      12.    At all times herein relevant, Defendants NUTRIEN, NUTRIEN AG

3   SOLUTIONS, INC., WESTERN FARM SERVICE, CROP PRODUCTION

4   SERVICES, INC., and DOES 2 through 100, and each of them, were the agents,

5   partners, joint venturers, joint employers, representatives, servants, employees,

6   successors-in-interest, co-conspirators and/or assigns, each of the other, and at all

7   times relevant hereto were acting within the course and scope of their authority as

8   such agents, partners, joint venturers, joint employers, representatives, servants,

9   employees, successors, co-conspirators and/or assigns, and all acts or omissions

10  alleged herein were duly committed with the ratification, knowledge, permission,

11  encouragement, authorization and/or consent of each defendant designated as a

12  DOE herein.

13     13.    The true names and capacities, whether corporate, associate,

14  individual or otherwise, of defendants DOES 2 through 100, inclusive, are

15  unknown to Plaintiff who sue said defendants by such fictitious names.  Plaintiff

16  is informed and believes, and based on that information and belief alleges, that

17  each of the defendants designated as a DOE is legally responsible for the events

18  and happenings referred to in this Complaint, and unlawfully caused the injuries

19  and damages to Plaintiff and the other class members as alleged in this Complaint.

20  Plaintiff will seek leave of court to amend this Complaint to show the true names

21  and capacities when the same have been ascertained.

22     14.    Defendant NUTRIEN, NUTRIEN AG SOLUTIONS, INC.,

23  WESTERN FARM SERVICE, INC., CROP PRODUCTION SERVICES, INC., and

24  DOES 2 through 100 will hereinafter collectively be referred to as "Defendants."

25  ///

26     15.    Plaintiff further alleges that Defendants directly or indirectly

27  controlled or affected the working conditions, wages, working hours, and

28  conditions of employment of Plaintiff and the other class members so as to make

each of said Defendants employers liable under the statutory provisions set forth herein.

**CLASS ACTION ALLEGATIONS**

16.     Plaintiff bring this action on his own behalf and on behalf of all other members of the general public similarly situated, and, thus, seeks class certification under California Code of Civil Procedure section 382.

17.     The proposed class is defined as follows:

> All current and former non-exempt employees who worked for any of the Defendants NUTRIEN, NUTRIEN AG SOLUTIONS, INC., WESTERN FARM SERVICE, INC., and CROP PRODUCTION SERVICES, INC or a predecessor entity within the State of California at any time during the period from October 6, 2016 through the date of entry of the Court order granting preliminary approval of the Settlement Agreement or June 7, 2023, whichever is earlier.

18.     Plaintiff reserves the right to amend the class definition and/or establish subclasses as appropriate.

19.     The class is ascertainable and there is a well-defined community of interest in the litigation:

> a.     Numerosity: The class members are so numerous that joinder of all class members is impracticable.   The membership of the entire class is unknown to Plaintiff at this time; however, the class is estimated to be greater than fifty (50) individuals and the identity of such membership is readily ascertainable by inspection of Defendants' employment records.

///

> b.     Typicality: Plaintiff's claims are typical of all other class members' as demonstrated herein.   Plaintiff will fairly and adequately protect the interests of the other class members with

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   whom he has a well-defined community of interest.

2   ///

3   ///

4       c.    <u>Adequacy</u>: Plaintiff will fairly and adequately protect the

5   interests of each class member, with whom he has a well-

6   defined community of interest and typicality of claims, as

7   demonstrated herein.   Plaintiff has no interest that is

8   antagonistic to the other class members.  Plaintiff's attorneys,

9   the proposed class counsel, are versed in the rules governing

10   class action discovery, certification, and settlement.  Plaintiff

11   has incurred, and during the pendency of this action will

12   continue to incur, costs and attorneys' fees, that have been, are,

13   and will be necessarily expended for the prosecution of this

14   action for the substantial benefit of each class member.

15       d.    <u>Superiority</u>: A class action is superior to other available

16   methods for the fair and efficient adjudication of this litigation

17   because individual joinder of all class members is impractical.

18       e.    <u>Public Policy Considerations</u>: Certification of this lawsuit as a

19   class action will advance public policy objectives.  Employers

20   of this great state violate employment and labor laws every day.

21   Current employees are often afraid to assert their rights out of

22   fear of direct or indirect retaliation.  However, class actions

23   provide the class members who are not named in the complaint

24   anonymity that allows for the vindication of their rights.

25       20.    There are common questions of law and fact as to the class members

26   that predominate over questions affecting only individual members.  The following

27   common questions of law or fact, among others, exist as to the members of the

28   class:

a.      Whether Defendants' failure to pay wages, without abatement or reduction, in accordance with the California Labor Code, was willful;

b.      Whether Defendants had a corporate policy and practice of failing to pay their hourly-paid or non-exempt employees within the State of California for all hours worked and missed (short, late, interrupted, and/or missed altogether) meal periods and rest breaks in violation of California law;

c.      Whether Defendants required Plaintiff and the other class members to work over eight (8) hours per day, over forty (40) hours per week, and/or over six (6) consecutive days in a week, and failed to pay the legally required overtime compensation to Plaintiff and the other class members;

d.      Whether Defendants failed use the non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, to calculate the regular rate of pay used to calculate the overtime rate for the payment of overtime wages where Plaintiff and the other class members earned non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, and overtime wages in the same workweek.

e.      Whether Defendants deprived Plaintiff and the other class members of meal and/or rest periods or required Plaintiff and the other class members to work during meal and/or rest periods without compensation;

f.      Whether Defendants failed to pay premium wages for failure to

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

7

provide meal periods and/or rest breaks at the regular rate of pay by failing to use the non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, to calculate the regular rate of pay rate for the payment of such premium wages where Plaintiff and the other class members earned non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, in the same workweek that they earned such premium wages.

g.      Whether Defendants failed to pay minimum wages to Plaintiff and the other class members for all hours worked;

h.      Whether Defendants failed to pay all wages due to Plaintiff and the other class members within the required time upon their discharge or resignation;

i.      Whether Defendants failed to timely pay all wages due to Plaintiff and the other class members during their employment;

j.      Whether Defendants complied with wage reporting as required by the California Labor Code; including, *inter alia*, sections 226 and 246;

k.      Whether Defendants failed to pay reporting time pay to Plaintiff and the other class members;

l.      Whether Defendants failed to provide a day of rest to Plaintiff and the other class members;

m.      Whether Defendants failed to provide notice to Plaintiff and the other class members as required by California Labor Code section 2810.5

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

n.   Whether Defendants failed to reimburse Plaintiff and the other class members for necessary business-related expenses and costs;

o.   Whether Defendants' conduct was willful or reckless;

p.   Whether Defendants engaged in unfair business practices in violation of California Business & Professions Code section 17200, et seq.;

q.   The appropriate amount of damages, restitution, and/or monetary penalties resulting from Defendants' violation of California law; and

r.   Whether Plaintiff and the other class members are entitled to compensatory damages pursuant to the California Labor Code.

## PAGA ALLEGATIONS

21.   At all times herein set forth, PAGA was applicable to Plaintiff's employment by Defendants.

22.   At all times herein set forth, PAGA provides that any provision of law under the California Labor Code that provides for a civil penalty, including unpaid wages and premium wages, to be assessed and collected by the LWDA for violations of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself and other current or former employees pursuant to procedures outlined in California Labor Code section 2699.3.

23.   Pursuant to PAGA, a civil action under PAGA may be brought by an "aggrieved employee," who is any person that was employed by the alleged violator and against whom one or more of the alleged violations was committed.

24.   Plaintiff was employed by Defendants and the alleged violations were committed against him during his time of employment and he is, therefore, an aggrieved employee. Plaintiff and all current and former non-exempt employees

who worked for any of the Defendants NUTRIEN, NUTRIEN AG SOLUTIONS, INC., WESTERN FARM SERVICE, INC., and CROP PRODUCTION SERVICES, INC or a predecessor entity within the State of California at any time during the period from September 2, 2019 through the date of entry of the Court order granting preliminary approval of the Settlement Agreement or June 7, 2023, whichever is earlier, are "aggrieved employees" as defined by California Labor Code section 2699(c) in that they are current or former employees of Defendants, and one or more of the alleged violations were committed against them.

25. Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved employee, including Plaintiff, may pursue a civil action arising under PAGA after the following requirements have been met:

a. The aggrieved employee shall give written notice by online submission (hereinafter "Employee's Notice") to the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

b. The LWDA shall provide notice (hereinafter "LWDA Notice") to the employer and the aggrieved employee by certified mail that it does not intend to investigate the alleged violation within sixty (60) calendar days of the postmark date of the Employee's Notice. Upon receipt of the LWDA Notice, or if the LWDA Notice is not provided within sixty-five (65) calendar days of the postmark date of the Employee's Notice, the aggrieved employee may commence a civil action pursuant to California Labor Code section 2699 to recover civil penalties in addition to any other penalties to which the employee may be entitled.

26. On March 25, 2021, Plaintiff provided written notice by online

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

FOURTH AMENDED CLASS ACTION COMPLAINT FOR DAMAGES & ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL

submission to the LWDA and by certified mail to Defendant NUTRIEN, NUTRIEN AG SOLUTIONS, INC., and WESTERN FARM SERVICE, INC. of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.  Plaintiff did not receive an LWDA Notice within sixty-five (65) days of the date of the submission of Plaintiff's Notice.

27.    On June 13, 2023, Plaintiff provided an amended written notice by online submission to the LWDA and by certified mail to Defendant NUTRIEN, NUTRIEN AG SOLUTIONS, INC., WESTERN FARM SERVICE, INC., and CROP PRODUCTION SERVICES, INC. of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

28.    Therefore, the administrative prerequisites under California Labor Code section 2699.3(a) to recover civil penalties against Defendants, in addition to other remedies, for violations of California Labor Code, *inter alia*, sections 201, 202, 203, 204, 226(a), 226.7, 246, 510, 512(a), 551, 551, 1174(d), 1194, 1197, 1197.1, 1198, 2800, 2802, and 2810.5, and Industrial Welfare Commission Wage Orders, including, *inter alia*, 1-2001, 7-2001, 8-2001, 13-2001, 14-2001, and 16-2001 have been satisfied.

## GENERAL ALLEGATIONS

29.    At all relevant times set forth herein, Defendants employed Plaintiff and other persons as hourly-paid or non-exempt employees within the State of California, including the County of Tulare.

30.    Defendants, jointly and severally, employed Plaintiff as an hourly-paid, non-exempt Delivery Driver, based out of a facility in Cutler, from approximately July 1, 2019 to approximately November 15, 2019, in the State of California, County of Tulare. Plaintiff's rate of pay was $15.00 per hour

31.    Defendants hired Plaintiff and the other class members and aggrieved

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

employees, classified them as hourly-paid or non-exempt employees, and failed to compensate them for all hours worked and missed meal periods and/or rest breaks.

32.     Defendants had the authority to hire and terminate Plaintiff and the other class members, to set work rules and conditions governing Plaintiff's and the other class members' and aggrieved employees' employment, and to supervise their daily employment activities.

33.     Defendants exercised sufficient authority over the terms and conditions of Plaintiff's and the other class members' and aggrieved employees' employment for them to be joint employers of Plaintiff and the other class members.

34.     Defendants directly hired and paid wages and benefits to Plaintiff and the other class members and aggrieved employees.

35.     Defendants continue to employ hourly-paid or non-exempt employees within the State of California.

36.     Plaintiff and the other class members and aggrieved employees worked over eight (8) hours in a day, forty (40) hours in a week, and/or over six (6) consecutive days in a week during their employment with Defendants.

37.     Plaintiff is informed and believes, and based thereon alleges, that Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California.  This pattern and practice involved, *inter alia*, failing to pay them for all minimum, regular, overtime, and reporting time wages earned and for missed, short, late, and/or interrupted meal periods and rest breaks in violation of California law.

38.     Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Plaintiff and the other class members and aggrieved employees were entitled to receive certain wages for overtime compensation and that they were not receiving accurate overtime compensation for all overtime hours worked.  Defendants' failure includes, *inter alia,* failing to

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

compensate Plaintiff and the other class members and aggrieved employees for job duties performed before and/or after their scheduled shifts, and/or during unpaid meal periods, such as completing deliveries, communicating and coordinating deliveries with customers, and providing supervisors with updates regarding the status of deliveries.

39.     Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Plaintiff and the other class members and aggrieved employees were entitled to pay equal to half the usual or scheduled day's work in an amount no less than two (2) hours nor more than four (4) hours at the employee's regular rate of pay for each workday in which Plaintiff and the other class members and aggrieved employees were required to report to work and were furnished less than half the usual or scheduled day's work.

40.     Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Plaintiff and the other class members and aggrieved employees were entitled to pay equal to no less than two (2) hours at Plaintiff's and the other class members' and aggrieved employees' regular rate of pay for each day in which Plaintiff and the other class members and aggrieved employees were required to report for work a second time in one workday and were furnished less than two hours of work on the second reporting.

41.     Plaintiff is informed and believes, and based thereon alleges, that Defendants failed to use the non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, to calculate the regular rate of pay used to calculate the overtime rate for the payment of overtime wages where Plaintiff and the other class members and aggrieved employees earned non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, and overtime wages in the same workweek.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

42.     Plaintiff is informed and believes, and based thereon alleges, that Defendants failed to provide Plaintiff and the other class members and aggrieved employees all required rest and meal periods during the relevant time period as required under the Industrial Welfare Commission Wage Orders and thus they are entitled to any and all applicable premium wages and penalties.

43.     Plaintiff is informed and believes, and based thereon alleges, that Defendants failed to relieve Plaintiff and other class members and aggrieved employees of all duties, failed to relinquish control over Plaintiff and the other class members' and aggrieved employees' activities, failed to permit Plaintiff and other class members and aggrieved employees' a reasonable opportunity to take, and impeded or discouraged them from taking, thirty (30) minute uninterrupted meal breaks no later than the end of their fifth hour of work for shifts lasting at least six (6) hours, and/or to take second thirty (30) minute uninterrupted meal breaks no later than their tenth hour of work for shifts lasting more than ten (10) hours.

44.     Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Plaintiff and the other class members and aggrieved employees were entitled to receive all meal periods or payment of one additional hour of pay at Plaintiff's and the other class members' and aggrieved employees' regular rate of pay when a meal period was missed, short, late, and/or interrupted, and they did not receive all meal periods or payment of one additional hour of pay at Plaintiff's and the other class members' and aggrieved employees' regular rate of pay when a meal period was missed, short, late, and/or interrupted.

45.     Plaintiff is informed and believes, and based thereon alleges, that Defendants failed to provide, authorize, and permit Plaintiff and other class members and aggrieved employees to take full, uninterrupted, off-duty rest periods for every shift lasting three and one-half (3.5) to six (6) hours and/or two full, uninterrupted, off-duty rest periods for every shift lasting six (6) to ten (10) hours

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

14

and/or three full, uninterrupted, off-duty rest periods for every shift lasting ten (10) hour to fourteen (14) hours, and failed to make a good faith effort to authorize, permit, and provide such rest breaks in the middle of each work period.

46.   Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Plaintiff and the other class members and aggrieved employees were entitled to receive all rest periods or payment of one additional hour of pay at Plaintiff's and the other class members' and aggrieved employees' regular rate of pay when a rest period was missed, short, late, and/or interrupted and they did not receive all rest periods or payment of one additional hour of pay at Plaintiff's and the other class members' and aggrieved employees' regular rate of pay when a rest period was missed, short, late, and/or interrupted.

47.   Plaintiff is informed and believes, and based thereon alleges, that, in those instances where Defendants did pay one additional hour of pay for a missed, short, late, and/or interrupted meal period, that Defendants failed to use the regular rate of pay by failing to use the non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, to calculate the regular rate of pay rate for the payment of such premium wages where Plaintiff and the other class members and aggrieved employees earned non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, in the same workweek that they earned such premium wages.

48.   Plaintiff is informed and believes, and based thereon alleges, that, in those instances where Defendants did pay one additional hour of pay for a missed, short, late, and/or interrupted rest break, that Defendants failed to use the regular rate of pay by failing to use the non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, to calculate the

15

FOURTH AMENDED CLASS ACTION COMPLAINT FOR DAMAGES & ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

regular rate of pay rate for the payment of such premium wages where Plaintiff and the other class members and aggrieved employees earned non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, in the same workweek that they earned such premium wages.

49.     Defendants knew or should have known that Plaintiff and the other class members and aggrieved employees' were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for all hours worked.  Defendants' failure to pay minimum wages included, *inter alia*, Defendants' effective payment of zero dollars per hour for hours that Plaintiff and the other class members worked off-the-clock performing work duties.

50.     Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Plaintiff and the other class members and aggrieved employees were entitled to receive all wages owed to them upon discharge or resignation, including minimum, reporting time, and overtime wages and meal and rest period premiums, and they did not, in fact, receive all such wages owed to them at the time of their discharge or resignation.

51.     Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Plaintiff and the other class members and aggrieved employees were entitled to receive all wages owed to them during their employment.  Plaintiff and the other class members and aggrieved employees did not receive payment of all wages, including minimum, regular, and overtime wages, reporting time pay, and meal and rest period premiums, within any time permissible under California Labor Code section 204.

52.     Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Plaintiff and the other class members and aggrieved employees were entitled to receive complete and accurate wage statements in accordance with California law, but, in fact, they did not receive

16

complete and accurate wage statements from Defendants. The deficiencies included, *inter alia*, the failure to include the accurate total number of hours worked, the accurate net and gross wages actually earned by Plaintiff and the other class members and aggrieved employees, the applicable rate of pay for each hour worked, and the amount of sick leave available.

53. Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Defendants had to keep complete and accurate payroll records for Plaintiff and the other class members and aggrieved employees in accordance with California law, but, in fact, did not keep complete and accurate payroll records. Defendants' failure included, *inter alia*, the failure to keep accurate records of the hours worked by Plaintiff and the other class members and aggrieved employees.

54. Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Plaintiff and the other class members and aggrieved employees were entitled to reimbursement for necessary business-related expenses, including, but not limited to, the use of personal phones for business-related purposes, such as communications with their supervisors and for recording their hours worked, the use of their personal vehicles for business-related purposes, and the purchase and use of safety gloves and special footwear.

55. Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that Defendants failed to provide notice to Plaintiff and the other class members and aggrieved employees as required by California Labor Code section 2810.5.

56. Plaintiff is informed and believes, and based thereon alleges, that Defendants knew or should have known that they had a duty to compensate Plaintiff and the other class members and aggrieved employees pursuant to California law, and that Defendants had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

17

falsely represented to Plaintiff and the other class members and aggrieved employees that they were properly denied wages, all in order to increase Defendants' profits.

57.     During the relevant time period, Defendants failed to pay overtime wages to Plaintiff and the other class members and aggrieved employees for all overtime hours worked.  Plaintiff and the other class members and aggrieved employees were required to work more than eight (8) hours per day, forty (40) hours per week, and/or more than six (6) consecutive days in a week without overtime compensation for all overtime hours worked.

58.     During the relevant time period, Defendants failed to provide all requisite uninterrupted meal and rest periods to Plaintiff and the other class members and aggrieved employees, by, *inter alia*, prohibiting employees from taking meal periods until all work was complete without regard to lawful timing requirements, instructing employees to clock out and continue working during lunch breaks, and denying them the opportunity to take their rest periods until after having worked more than four hours.

59.     During the relevant time period, Defendants failed to pay Plaintiff and the other class members and aggrieved employees at least minimum wages for all hours worked by, *inter alia*, requiring them to perform work off the clock such as providing updates to managers and supervisors about previous days' work prior to clocking in at the start of shifts.

60.     During the relevant time period, Defendants failed to pay Plaintiff and the other class members and aggrieved employees all wages owed to them upon discharge or resignation.

61.     During the relevant time period, Defendants failed to pay Plaintiff and the other class members and aggrieved employees all wages within any time permissible under California law, including, *inter alia*, California Labor Code section 204.

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

62.     During the relevant time period, Defendants failed to provide complete or accurate wage statements to Plaintiff and the other class members and aggrieved employees.

63.     During the relevant time period, Defendants failed to provide notice to Plaintiff and the other class members and aggrieved employees as required by California Labor Code section 2810.5.

64.     During the relevant time period, Defendants failed to keep complete or accurate payroll records for Plaintiff and the other class members and aggrieved employees.

65.     During the relevant time period, Defendants failed to properly compensate Plaintiff and the other class members and aggrieved employees pursuant to California law in order to increase Defendants' profits.

66.     California Labor Code section 218 states that nothing in Article 1 of the Labor Code shall limit the right of any wage claimant to "sue directly . . . for any wages or penalty due to him [or her] under this article."

## FIRST CAUSE OF ACTION

### (Violation of California Labor Code §§ 510 and 1198)

### (Against NUTRIEN, NUTRIEN AG SOLUTIONS, INC., WESTERN FARM SERVICE, INC., CROP PRODUCTION SERVICES, INC., and DOES 2 through 100)

67.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 66, and each and every part thereof with the same force and effect as though fully set forth herein.

68.     California Labor Code section 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order provide that it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

69.    Specifically, the applicable IWC Wage Order provides that Defendants are and were required to pay Plaintiff and the other class members employed by Defendants, and working more than eight (8) hours in a day, more than forty (40) hours in a week, and/or more than six (6) consecutive days in a workweek, at the rate of time-and-one-half for all hours worked in excess of eight (8) hours in a day, more than forty (40) hours in a week, or the first eight (8) hours on the seventh day of work in a workweek.

70.    The applicable IWC Wage Order further provides that Defendants are and were required to pay Plaintiff and the other class members overtime compensation at a rate of two times their regular rate of pay for all hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours on the sixth consecutive day of work in a workweek.

71.    California Labor Code section 510 codifies the right to overtime compensation at one-and-one-half times the regular hourly rate for hours worked in excess of eight (8) hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh day of work, and to overtime compensation at twice the regular hourly rate for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the seventh day of work.

72.    During the relevant time period, Plaintiff and the other class members worked in excess of eight (8) hours in a day, in excess of forty (40) hours in a week, and/or in excess of six (6) consecutive days in a workweek, including performing work off the clock at the direction of Defendants, such as completing deliveries, communicating and coordinating deliveries with customers, and providing supervisors with updates regarding the status of deliveries as well as the status of their prior day's work pre-shift, pre-clock-in.

73.    During the relevant time period, Defendants intentionally and willfully failed to pay overtime wages owed to Plaintiff and the other class members.   Plaintiff and the other class members did not receive overtime

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

compensation at one and one-half times their regular hourly rate of pay for all hours spent performing job duties in excess of eight (8) hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh day of work. By way of example during month of July 2019, Plaintiff was not compensated at an overtime rate for all time worked in excess of eight (8) hours per day.

74.  During the relevant time period, Defendants failed to use the non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, to calculate the regular rate of pay used to calculate the overtime rate for the payment of overtime wages where Plaintiff and the other class members earned non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, and overtime wages in the same workweek.

75.  Defendants' failure to pay Plaintiff and the other class members the unpaid balance of overtime compensation, as required by California laws, violates the provisions of California Labor Code sections 510 and 1198, and is therefore unlawful.

76.  Pursuant to California Labor Code section 1194, Plaintiff and the other class members are entitled to recover unpaid overtime compensation, as well as interest, costs, and attorneys' fees.

## SECOND CAUSE OF ACTION

**(Violation of California Labor Code §§ 226.7 and 512(a))**

**(Against NUTRIEN, NUTRIEN AG SOLUTIONS, INC., WESTERN FARM SERVICE, INC., CROP PRODUCTION SERVICES, INC., and DOES 2 through 100)**

77.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 76, and each and every part thereof with the same force and effect as though fully set forth herein.

21

78. At all relevant times, the IWC Order and California Labor Code sections 226.7 and 512(a) were applicable to Plaintiff's and the other class members' employment by Defendants.

79. At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any meal or rest period mandated by an applicable order of the California IWC.

80. At all relevant times, the applicable IWC Wage Order and California Labor Code section 512(a) provide that an employer may not require, cause or permit an employee to work for a work period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is no more than six (6) hours, the meal period may be waived by mutual consent of both the employer and employee.

81. At all relevant times, the applicable IWC Wage Order and California Labor Code section 512(a) further provide that an employer may not require, cause or permit an employee to work for a work period of more than ten (10) hours per day without providing the employee with a second uninterrupted meal period of not less than thirty (30) minutes, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

82. During the relevant time period, Plaintiff and the other class members who were scheduled to work for a period of time no longer than six (6) hours, and who did not waive their legally-mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted, off-duty meal period of not less than thirty (30) minutes and/or rest period.

83. During the relevant time period, Plaintiff and the other class members who were scheduled to work for a period of time in excess of six (6) hours were required to work for periods longer than five (5) hours without an uninterrupted,

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

off-duty meal period of not less than thirty (30) minutes and/or rest period.

84.     During the relevant time period, Plaintiff and the other class members' meal periods were missed, shortened, taken late, and/or were interrupted because Defendant required them to perform work duties including, but not limited to, completing deliveries, communicating and coordinating deliveries with customers, and providing supervisors with updates regarding the status of deliveries. By way of example, Plaintiff was instructed to continue working past the end of his fifth hour of work, but simultaneously told to clock out prior to the end of his fifth hour of work, and clock back in thirty (30) minutes later, so as to create the artificial impression in his time records that a timely, thirty (30) minute meal period had been taken.

85.     As a result, Defendants failed to relieve Plaintiff and the other class members of all duties, failed to relinquish control over Plaintiff and the other class members' activities, failed to permit Plaintiff and the other class members a reasonable opportunity to take, and impeded or discouraged them from taking thirty (30) minute uninterrupted meal periods no later than the end of their fifth hour of work for shifts lasting more than five (5) hours, and/or to take second thirty (30) minute uninterrupted meal periods no later than their tenth hour of work for shifts lasting more than ten (10) hours.

86.     During the relevant time period, Defendants intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate Plaintiff and the other class members the full meal period premium for work performed during meal periods.

87.     During the relevant time period, Defendants failed to pay Plaintiff and the other class members the full meal period premium due pursuant to California Labor Code section 226.7.  In those instances where Defendants did pay one additional hour of pay for a missed, short, late, and/or interrupted meal period, Defendants failed to use the regular rate of pay by failing to use the non-

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, to calculate the regular rate of pay rate for the payment of such premium wages where Plaintiff and the other class members and aggrieved employees earned non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, in the same workweek that they earned such premium wages.

88.    Defendants' conduct violates applicable IWC Wage Order and California Labor Code sections 226.7 and 512(a).

89.    Pursuant to applicable IWC Wage Order and California Labor Code section 226.7(c), Plaintiff and the other class members are entitled to recover from Defendants one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

### THIRD CAUSE OF ACTION

**(Violation of California Labor Code § 226.7)**

**(Against NUTRIEN, NUTRIEN AG SOLUTIONS, INC.,**

**WESTERN FARM SERVICE, INC., CROP PRODUCTION SERVICES,**

**INC., and DOES 2 through 100)**

90.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 89, and each and every part thereof with the same force and effect as though fully set forth herein.

91.    At all times herein set forth, the applicable IWC Wage Order and California Labor Code section 226.7 were applicable to Plaintiff's and the other class members' employment by Defendants.

92.    At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.

93.    At all relevant times, the applicable IWC Wage Order provides that

"[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

94. During the relevant time period, Defendants required Plaintiff and other class members to work three and one-half (3½) or more hours without authorizing or permitting an off-duty, net ten (10) minute rest period per each four (4) hour period, or major fraction thereof, worked.

95. During the relevant time period, Plaintiff and the other class members' rest periods were missed, shortened, late, and/or interrupted because Defendants required them to perform work duties including, but not limited to, completing deliveries, communicating and coordinating deliveries with customers,  and providing supervisors with updates regarding the status of deliveries, and Defendants failed to authorize or permit Plaintiff and the other class members or failed to relinquish control over Plaintiff and the other class members' activities in order to take full, uninterrupted, off-duty rest periods for every shift lasting three and one-half (3½) to six (6) hours and/or two full, uninterrupted, off-duty rest periods for every shift lasting six (6) to ten (10) hours, and/or three full, uninterrupted, off-duty rest periods for every shift lasting ten (10) to fourteen (14) hours and failed to make a good faith effort to authorize, permit, and provide such rest breaks in the middle of each work period.  By way of example, in August 2019, Plaintiff worked over ten hours but was not authorized or permitted to take three full, uninterrupted, off-duty rest periods.  By way of another example, Plaintiff was not permitted to take any rest break until after having worked four hours on scores of occasions.

96. During the relevant time period, Defendants willfully required Plaintiff and the other class members to work during rest periods and failed to pay

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

25

FOURTH AMENDED CLASS ACTION COMPLAINT FOR DAMAGES & ENFORCEMENT UNDER THE PRIVATE ATTORNEYS
GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Plaintiff and the other class members the full rest period premium for work performed during rest periods. For example, throughout his employment with Defendants, although Plaintiff was not authorized and permitted to take full, uninterrupted, off-duty rest periods for each four hours worked, or major fraction thereof, he was not provided with rest period premium payments.

97.     During the relevant time period, Defendants failed to pay Plaintiff and the other class members the full rest period premium due pursuant to California Labor Code section 226.7. In those instances where Defendants did pay one additional hour of pay for a missed, short, late, and/or interrupted rest break, Defendants failed to use the regular rate of pay by failing to use the non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, to calculate the regular rate of pay rate for the payment of such premium wages where Plaintiff and the other class members and aggrieved employees earned non-discretionary shift differential/bonus/performance/incentive compensation and/or other non-hourly compensation, such as auto allowances and taxable fringe benefits, in the same workweek that they earned such premium wages

98.     Defendants' conduct violates applicable IWC Wage Orders and California Labor Code section 226.7.

99.     Pursuant to the applicable IWC Wage Orders and California Labor Code section 226.7(c), Plaintiff and the other class members are entitled to recover from Defendants one additional hour of pay at the employees' regular hourly rate of compensation for each work day that the rest period was not provided.

///
///
///
///

**FOURTH CAUSE OF ACTION**

**(Violation of California Labor Code §§ 1194, 1197, and 1197.1)**

**(Against NUTRIEN, NUTRIEN AG SOLUTIONS, INC.,**

**WESTERN FARM SERVICE, INC., CROP PRODUCTION SERVICES,**

**INC., and DOES 2 through 100)**

100.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 99, and each and every part thereof with the same force and effect as though fully set forth herein.

101.  At all relevant times, California Labor Code sections 1194, 1197, and 1197.1 provide that the minimum wage to be paid to employees, and the payment of a lesser wage than the minimum so fixed is unlawful.

102.  During the relevant time period, Defendants failed to pay wages to Plaintiff and the other class members, including, *inter alia*, minimum wages, overtime wages, meal and rest premiums, and reporting time pay, as required, pursuant to California Labor Code sections 1194, 1197, and 1197.1. Defendants' failure to pay minimum wages included, *inter alia*, Defendants' effective payment of zero dollars per hour for hours Plaintiff and the other class members worked off-the-clock performing work duties including, but not limited to, completing deliveries, communicating and coordinating deliveries with customers, and providing supervisors with updates regarding the status of deliveries and regarding the status of their work assignments from previous days' work pre-shift, off the clock.  Plaintiff spent time performing work duties off-the-clock throughout his employment with Defendants.

103.  Defendants' failure to pay Plaintiff and the other class members the minimum wage and all wages due as required violates California Labor Code sections 1194, 1197, and 1197.1.  Pursuant to those sections Plaintiff and the other class members are entitled to recover the unpaid balance of their unpaid wage compensation as well as interest, costs, and attorney's fees, and liquidated damages

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

in an amount equal to the wages unlawfully unpaid and interest thereon.

104.   Pursuant to California Labor Code section 1197.1, Plaintiff and the other class members are entitled to recover a penalty of $100.00 for the initial failure to timely pay each employee wages, and $250.00 for each subsequent failure to pay each employee wages.

105.   Pursuant to California Labor Code section 1194.2, Plaintiff and the other class members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

## FIFTH CAUSE OF ACTION

**(Violation of California Labor Code §§ 201 and 202)**

**(Against NUTRIEN, NUTRIEN AG SOLUTIONS, INC.,**

**WESTERN FARM SERVICE, INC., CROP PRODUCTION SERVICES,**

**INC., and DOES 2 through 100)**

106.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 105, and each and every part thereof with the same force and effect as though fully set forth herein.

107.   At all relevant times herein set forth, California Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and if an employee quits his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours' notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

108.   During the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members who were discharged, or who provided at least seventy-two (72) hours' notice of their intention to quit, their wages, earned and unpaid, immediately at the time of their discharge or separation.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

109.   During the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ.

110.   Plaintiff was not paid at the time of his separation all wages earned and unpaid throughout her employment, including but not limited to, minimum wages and overtime wages for time worked off-the-clock, reporting time pay, and meal and rest period premium payments for short, late, interrupted, and/or missed meal and rest periods.

111.   Defendants' failure to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor Code sections 201 and 202.

112.   California Labor Code section 203 provides that if an employer willfully fails to pay wages owed, in accordance with sections 201 and 202, then the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days.

113.   Plaintiff and the other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203.

## SIXTH CAUSE OF ACTION

### (Violation of California Labor Code § 204)

### (Against NUTRIEN, NUTRIEN AG SOLUTIONS, INC., WESTERN FARM SERVICE, INC., CROP PRODUCTION SERVICES, INC., and DOES 2 through 100)

114.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 113, and each and every part thereof with the same force and

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

effect as though fully set forth herein.

115.   At all times herein set forth, California Labor Code section 204 provides that all wages earned by any person in any employment between the 1st and 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed.

116.   At all times herein set forth, California Labor Code section 204 provides that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.

117.   At all times herein set forth, California Labor Code section 204 provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.

118.   During the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members all wages due to them, within any time period permissible under California Labor Code section 204.  By way of example, Plaintiff and the other class members worked off-the-clock performing work duties including, but not limited to, completing deliveries, communicating and coordinating deliveries with customers, and providing supervisors with updates regarding the status of deliveries and regarding the status of their work assignments from previous days' work pre-shift, off the clock. Plaintiff spent time performing work duties off-the-clock throughout his employment with Defendants.

119.   Plaintiff and the other class members are entitled to recover all remedies available for violations of California Labor Code section 204.

///

///

FOURTH AMENDED CLASS ACTION COMPLAINT FOR DAMAGES & ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL

**SEVENTH CAUSE OF ACTION**

**(Violation of California Labor Code § 226(a))**

**(Against NUTRIEN, NUTRIEN AG SOLUTIONS, INC.,**

**WESTERN FARM SERVICE, INC., CROP PRODUCTION SERVICES,**

**INC., and DOES 2 through 100)**

120.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 119, and each and every part thereof with the same force and effect as though fully set forth herein.

121.   At all material times set forth herein, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.  The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

122.   Defendants have intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements.  The deficiencies include, but are not limited to: the failure to include the accurate total number of hours worked by Plaintiff and the other class members, the accurate net

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

31

FOURTH AMENDED CLASS ACTION COMPLAINT FOR DAMAGES & ENFORCEMENT UNDER THE PRIVATE ATTORNEYS
GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

and gross wages earned, the accurate applicable rate of pay for each hour worked, and the amount of sick leave available. As the employer willfully requiring work to be performed off-the-clock and failing to provide, authorize, and/or permit compliant meal and rest periods or to pay all premium wages owed for such failure, Defendants had the information necessary to provide wage statements that accurately reflected the total number of hours actually worked and the actual gross and net wages earned, the accurate applicable rate of pay for each hour worked, and the amount of sick leave available, yet failed to do so on a systematic basis and instead provided wage statements that did not reflect the time worked off-the-clock or all meal and rest period premiums earned.

123.  As a result of Defendants' violation of California Labor Code section 226(a), Plaintiff and the other class members have suffered injury and damage to their statutorily-protected rights.  Because Plaintiff and the other class members' wage statements did not reflect the accurate number of hours worked, Plaintiff and the putative class members were unable to determine the total amount of hours they worked, were unable to determine the total amount of compensation they were owed, were unable to verify they were paid the proper amount, and were unable to determine the amount of sick leave available.  In order to determine how much Plaintiff and the other class members should have been paid, Plaintiff and the other class members would have had to engage in discovery and mathematical computations in order to reconstruct the missing information.

124.  More specifically, Plaintiff and the other class members have been injured by Defendants' intentional and willful violation of California Labor Code section 226(a) because they were denied both their legal right to receive, and their protected interest in receiving, accurate and itemized wage statements pursuant to California Labor Code section 226(a).

125.  Plaintiff and the other class members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to

comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars per employee.

126.   Plaintiff and the other class members are also entitled to injunctive relief to ensure compliance with this section, pursuant to California Labor Code section 226(h).

## EIGHTH CAUSE OF ACTION

**(Violation of California Labor Code §§ 2800 and 2802)**

**(Against NUTRIEN, NUTRIEN AG SOLUTIONS, INC.,**

**WESTERN FARM SERVICE, INC., CROP PRODUCTION SERVICES,**

**INC., and DOES 2 through 100)**

127.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 126, and each and every part thereof with the same force and effect as though fully set forth herein.

128.   Pursuant to California Labor Code sections 2800 and 2802, an employer must reimburse its employee for all necessary expenditures incurred by the employee in direct consequence of the discharge of his or her job duties or in direct consequence of his or her obedience to the directions of the employer.

129.   Plaintiff and the other class members incurred necessary business-related expenses and costs in direct consequence of the discharge of their job duties or in direct consequence of their obedience to the directions of Defendants throughout the duration of their employment that were not fully reimbursed by Defendants including, but not limited to, the use of personal phones for business-related purposes, such as communications with their supervisors and for recording their hours worked, the use of their personal vehicles for business-related purposes, and the purchase and use of safety gloves and special footwear.

130.   Defendants have intentionally and willfully failed to reimburse Plaintiff and the other class members for all necessary business-related expenses and costs.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

131.   Plaintiff and the other class members are entitled to recover from Defendants their business-related expenses and costs incurred during the course and scope of their employment, plus interest accrued from the date on which the employee incurred the necessary expenditures at the same rate as judgments in civil actions in the State of California.

## NINTH CAUSE OF ACTION

**(Violation of California Business & Professions Code §§ 17200, et seq.)**

**(Against NUTRIEN, NUTRIEN AG SOLUTIONS, INC.,**

**WESTERN FARM SERVICE, INC., CROP PRODUCTION SERVICES,**

**INC., and DOES 2 through 100)**

132.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 131, and each and every part thereof with the same force and effect as though fully set forth herein.

133.   Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful and harmful to Plaintiff, other class members, to the general public, and Defendants' competitors.   Accordingly, Plaintiff seek to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

134.   Defendants' activities as alleged herein are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code section 17200, et seq.

135.   A violation of California Business & Professions Code section 17200, et seq. may be predicated on the violation of any state or federal law.  In this instant case, Defendants' policies and practices of requiring employees, including Plaintiff and the other class members, to work overtime without paying them proper compensation violate California Labor Code sections 510 and 1198.  Additionally, Defendants' policies and practices of requiring employees, including Plaintiff and the other class members, to work through their meal and rest periods without

34

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

paying them proper compensation violate California Labor Code sections 226.7 and 512(a).  Defendants' policies and practices of failing to pay all wages due, including and not limited to minimum, overtime, and reporting time wages, and meal and rest premiums violate California Labor Code sections 1194, 1197, and 1197.1.  Moreover, Defendants' policies and practices of failing to timely pay wages to Plaintiff and the other class members violate California Labor Code sections 201, 202 and 204.  Defendants also violated California Labor Code sections 226(a), 246, 1174(d), 2800 and 2802.  Defendants also violated California Labor Code 28105.5 by failing to provide notice to Plaintiff and the other class members.

136.  As a result of the herein described violations of California law, Defendants unlawfully gained an unfair advantage over other businesses.

137.  Plaintiff and the other class members have been personally injured by Defendants' unlawful business acts and practices as alleged herein, including but not necessarily limited to the loss of money and/or property.

138.  Pursuant to California Business & Professions Code sections 17200, et seq., Plaintiff and the other class members are entitled to restitution of the wages withheld and retained by Defendants; an award of attorneys' fees pursuant to California Code of Civil procedure section 1021.5 and other applicable laws; and an award of costs.

## TENTH CAUSE OF ACTION

### (Violation of California Labor Code §§ 2698, et seq.)

### (Against NUTRIEN, NUTRIEN AG SOLUTIONS, INC., WESTERN FARM SERVICE, INC., CROP PRODUCTION SERVICES, INC., and DOES 2 through 100)

139.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 138, and each and every part thereof with the same force and effect as though fully set forth herein.

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

140.   PAGA expressly establishes that any provision of the California Labor Code which provides for a civil penalty to be assessed and collected by the LWDA, or any of its departments, divisions, commissions, boards, agencies or employees for a violation of the California Labor Code, may be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself, and other current or former employees.

141.   Whenever the LWDA, or any of its departments, divisions, commissions, boards, agencies, or employees has discretion to assess a civil penalty, a court in a civil action is authorized to exercise the same discretion, subject to the same limitations and conditions, to assess a civil penalty.

142.   Plaintiff and the other hourly-paid or non-exempt employees are "aggrieved employees" as defined by California Labor Code section 2699(c) in that they are all current or former employees of Defendants, and one or more of the alleged violations was committed against them.

### Failure to Pay Overtime

143.   Defendants' failure to pay legally required overtime wages to Plaintiff and the other aggrieved employees is in violation of the Wage Orders and constitutes unlawful or unfair activity prohibited by California Labor Code sections 510 and 1198.

### Failure to Provide Meal Periods

144.   Defendants' failure to provide legally required meal periods to Plaintiff and the other aggrieved employees and/or pay an additional hour pay at the regular rate of pay when the meal period is not provided is in violation of the Wage Orders and constitutes unlawful or unfair activity prohibited by California Labor Code sections 226.7 and 512(a).

### Failure to Provide Rest Periods

145.   Defendants' failure to provide legally required rest periods to Plaintiff and the other aggrieved employees and/or pay an additional hour pay at the regular

rate of pay when the rest period is not provided is in violation of the Wage Orders and constitutes unlawful or unfair activity prohibited by California Labor Code section 226.7.

### Failure to Pay Minimum Wages

146.   Defendants' failure to pay legally required minimum wages to Plaintiff and the other aggrieved employees is in violation of the Wage Orders and constitutes unlawful or unfair activity prohibited by California Labor Code sections 1194, 1197 and 1197.1.

### Failure to Provide Notice to Employees

147.   Defendants' failure to provide notice to Plaintiff and the other aggrieved employees containing requisite information in violation of California Labor Code section 2810.5 constitutes lawful and/or unfair activity prohibited by California Labor Code section 2810.5.

### Failure to Pay Reporting Time Pay

148.   Defendants' failure to pay reporting time pay to Plaintiff and the other aggrieved employees in violation of the Wage Order and by California Labor Code section 1198, as alleged above, constitutes unlawful or unfair activity prohibited by the Wage Orders and by California Labor Code section 1198.

### Failure to Timely Pay Wages Upon Termination

149.   Defendants' failure to timely pay wages to Plaintiff and the other aggrieved employees upon termination in accordance with Labor Code sections 201 and 202 constitutes unlawful and/or unfair activity prohibited by California Labor Code sections 201 and 202.

### Failure to Timely Pay Wages During Employment

150.   Defendants' failure to timely pay wages to Plaintiff and the other aggrieved employees during employment in accordance with Labor Code section 204 constitutes unlawful and/or unfair activity prohibited by California Labor Code section 204.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

### Failure to Provide Complete and Accurate Wage Statements

151.   Defendants' failure to provide complete and accurate wage statements to Plaintiff and the other aggrieved employees in accordance with Labor Code section 226(a) constitutes unlawful and/or unfair activity prohibited by California Labor Code section 226(a).

### Failure to Keep Complete and Accurate Payroll Records

152.   Defendants' failure to keep complete and accurate payroll records relating to Plaintiff and the other aggrieved employees in accordance with California Labor Code section 1174(d) constitutes unlawful and/or unfair activity prohibited by California Labor Code section 1174(d).

### Failure to Reimburse Necessary Business-Related Expenses and Costs

153.   Defendants' failure to reimburse Plaintiff and the other aggrieved employees for necessary business-related expenses and costs in accordance with California Labor Code sections 2800 and 2802 constitutes unlawful and/or unfair activity prohibited by California Labor Code sections 2800 and 2802.

### Failure to Inform Employees of Available Sick Leave

154.   Defendants' failure to inform Plaintiff and the other aggrieved employees in writing at the time wages were paid of the amount of sick leave available to them constitutes unlawful and/or unfair activity prohibited by California Labor Code sections 246.

155.   Pursuant to California Labor Code section 2699, Plaintiff, individually, and on behalf of all aggrieved employees, requests and is entitled to recover from Defendants and each of them, business expenses, unpaid wages, and/or untimely wages according to proof, interest, attorneys' fees and costs pursuant to California Labor Code section 218.5, as well as all statutory penalties against Defendants, and each of them, including but not limited to:

      a.   Penalties under California Labor Code section 2699 in the amount of a hundred dollars ($100) for each aggrieved employee

per pay period for the initial violation, and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation;

b.   Penalties under California Code of Regulations Title 8 section 11010, et seq. in the amount of fifty dollars ($50) for each aggrieved employee per pay period for the initial violation, and one hundred dollars ($100) for each aggrieved employee per pay period for each subsequent violation;

c.   Penalties under California Labor Code section 210 in addition to, and entirely independent and apart from, any other penalty provided in the California Labor Code in the amount of a hundred dollars ($100) for each aggrieved employee per pay period for the initial violation, and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation; and

d.   Any and all additional penalties and sums as provided by the California Labor Code and/or other statutes.

156.   Pursuant to California Labor Code section 2699(i), civil penalties recovered by aggrieved employees shall be distributed as follows: seventy-five percent (75%) to the Labor and Workforce Development Agency for the enforcement of labor laws and education of employers and employees about their rights and responsibilities and twenty-five percent (25%) to the aggrieved employees.

157.   Further, Plaintiff is entitled to seek and recover reasonable attorneys' fees and costs pursuant to California Labor Code sections 210, 218.5 and 2699 and any other applicable statute.

## DEMAND FOR JURY TRIAL

Plaintiff, individually, and on behalf of other members of the general public

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act, requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act, prays for relief and judgment against Defendants, jointly and severally, as follows:

## Class Certification

1.     That this action be certified as a class action as to the first nine causes of action;

2.     That Plaintiff be appointed as the representative of the Class as to the first nine causes of action;

3.     That counsel for Plaintiff be appointed as Class Counsel; and

4.     That Defendants provide to Class Counsel immediately the names and most current/last known contact information (address, e-mail and telephone numbers) of all class members.

## As to the First Cause of Action

5.     That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 510 and 1198 and applicable IWC Wage Orders by willfully failing to pay all overtime wages due to Plaintiff and the other class members;

6.     For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

7.     For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due;

8.     For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Labor Code section 1194; and

9.     For such other and further relief as the Court may deem just and

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

proper.

## As to the Second Cause of Action

10.     That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 226.7 and 512 and applicable IWC Wage Orders by willfully failing to provide all meal periods (including second meal periods) to Plaintiff and the other class members;

11.     That the Court make an award to Plaintiff and the other class members of one (1) hour of pay at each employee's regular rate of compensation for each workday that a meal period was not provided;

12.     For all actual, consequential, and incidental losses and damages, according to proof;

13.     For premium wages pursuant to California Labor Code section 226.7(c);

14.     For pre-judgment interest on any unpaid wages from the date such amounts were due;

15.     For reasonable attorneys' fees and costs of suit incurred herein; and

16.     For such other and further relief as the Court may deem just and proper.

## As to the Third Cause of Action

17.     That the Court declare, adjudge and decree that Defendants violated California Labor Code section 226.7 and applicable IWC Wage Orders by willfully failing to provide all rest periods to Plaintiff and the other class members;

18.     That the Court make an award to Plaintiff and the other class members of one (1) hour of pay at each employee's regular rate of compensation for each workday that a rest period was not provided;

19.     For all actual, consequential, and incidental losses and damages, according to proof;

20.     For premium wages pursuant to California Labor Code section

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

FOURTH AMENDED CLASS ACTION COMPLAINT FOR DAMAGES & ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE § 2698, ET SEQ. AND DEMAND FOR JURY TRIAL

226.7(c);

21.     For pre-judgment interest on any unpaid wages from the date such amounts were due; and

22.     For such other and further relief as the Court may deem just and proper.

### As to the Fourth Cause of Action

23.     That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1194, 1197, and 1197.1 by willfully failing to pay minimum wages to Plaintiff and the other class members;

24.     For general unpaid wages and such general and special damages as may be appropriate;

25.     For statutory wage penalties pursuant to California Labor Code section 1197.1 for Plaintiff and the other class members in the amount as may be established according to proof at trial;

26.     For pre-judgment interest on any unpaid compensation from the date such amounts were due;

27.     For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Labor Code section 1194(a);

28.     For liquidated damages pursuant to California Labor Code section 1194.2; and

29.     For such other and further relief as the Court may deem just and proper.

### As to the Fifth Cause of Action

30.     That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 201, 202, and 203 by willfully failing to pay all compensation owed at the time of termination of the employment of Plaintiff and the other class members no longer employed by Defendants;

31.     For all actual, consequential, and incidental losses and damages,

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  according to proof;

2      32.    For statutory wage penalties pursuant to California Labor Code

3  section 203 for Plaintiff and the other class members who have left Defendants'

4  employ;

5      33.    For pre-judgment interest on any unpaid compensation from the date

6  such amounts were due; and

7      34.    For such other and further relief as the Court may deem just and

8  proper.

9              **As to the Sixth Cause of Action**

10     35.    That the Court declare, adjudge and decree that Defendants violated

11 California Labor Code section 204 by willfully failing to pay all compensation

12 owed at the time required by California Labor Code section 204 to Plaintiff and the

13 other class members;

14     36.    For all actual, consequential, and incidental losses and damages,

15 according to proof;

16     37.    For pre-judgment interest on any unpaid compensation from the date

17 such amounts were due; and

18     38.    For such other and further relief as the Court may deem just and

19 proper.

20              **As to the Seventh Cause of Action**

21     39.    That the Court declare, adjudge and decree that Defendants violated

22 the record keeping provisions of California Labor Code section 226(a) and

23 applicable IWC Wage Orders as to Plaintiff and the other class members, and

24 willfully failed to provide accurate itemized wage statements thereto;

25     40.    For actual, consequential and incidental losses and damages,

26 according to proof;

27     41.    For statutory penalties pursuant to California Labor Code section

28 226(e);

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

42.    For injunctive relief to ensure compliance with this section, pursuant to California Labor Code section 226(h); and

43.    For such other and further relief as the Court may deem just and proper.

### As to the Eighth Cause of Action

44.    That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 2800 and 2802 by willfully failing to reimburse Plaintiff and the other class members for all necessary business-related expenses as required by California Labor Code sections 2800 and 2802;

45.    For actual, consequential and incidental losses and damages, according to proof;

46.    For the imposition of civil penalties and/or statutory penalties;

47.    For reasonable attorneys' fees and costs of suit incurred herein; and

48.    For such other and further relief as the Court may deem just and proper.

### As to the Ninth Cause of Action

49.    That the Court decree, adjudge and decree that Defendants violated California Business and Professions Code sections 17200, et seq. by failing to provide Plaintiff and the other class members all minimum, overtime, and reporting time compensation and meal and rest period premiums due to them, failing to provide all meal and rest periods to Plaintiff and the other class members, failing to pay at least minimum wages to Plaintiff and the other class members, failing to pay Plaintiff's and the other class members' wages timely as required by California Labor Code, including *inter alia*, sections 201, 202, 203, 204, 226(a), 510, 512(a), 551, 552, 1194, 1197.1, 1198 and by violating California Labor Code sections 201, 202, 203, 204, 226(a), 226.7, 510, 512(a), 551, 552, 1174(d), 1194, 1197, 1197.1, 1198, 2800, 2802, and 2810.5, and Industrial Welfare Commission Wage Orders 1-2001, 7-2001, 8-2001, 13-2001, 14-2001, and 16-2001.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

50.    For restitution of unpaid wages to Plaintiff and all the other class members and all pre-judgment interest from the day such amounts were due and payable;

51.    For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violation of California Business and Professions Code sections 17200, et seq.;

52.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5;

53.    For injunctive relief to ensure compliance with this section, pursuant to California Business and Professions Code sections 17200, et seq.; and

54.    For such other and further relief as the Court may deem just and proper.

## As to the Tenth Cause of Action

55.    For civil penalties and wages pursuant to California Labor Code sections 2699(a), (f) and (g) plus costs and attorneys' fees for violation of California Labor Code sections 201, 202, 203, 204, 226(a), 226.7, 246, 510, 512(a), 551, 552, 1174(d), 1194, 1197, 1197.1, 1198, 2800, 2802, and 2810.5, and Industrial Welfare Commission Wage Orders 1-2001, 7-2001, 8-2001, 13-2001, 14-2001, and 16-2001; and

56.    For such other and further relief as the Court may deem equitable and appropriate.

Dated:                                          **LAWYERS *for* JUSTICE, PC**


By: _____
        Annabel Blanchard
        *Attorneys for* Plaintiff

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

# EXHIBIT B

## NOTICE OF CLASS ACTION SETTLEMENT

### *Bobby Grayson, III v. Nutrien, et al.*
### United States District Court, Eastern District of California

---

**PLEASE READ THIS NOTICE CAREFULLY**.

**You have received this Notice because Defendants' records indicate that you may be eligible to take part in the class action settlement reached in the above-referenced case.**

**You do not need to take any action to receive a settlement payment.**

**This Notice is designed to advise you of your rights and options with respect to the settlement, and how you can request to be excluded from the Class Settlement, object to the Class Settlement, and/or dispute the number of Workweeks that you are credited with, if you so choose.**

---

**YOU ARE NOTIFIED THAT:** A class and representative action settlement has been reached between Plaintiff Bobby Grayson, III ("Plaintiff") and Defendants Nutrien, Nutrien AG Solutions, Inc., Western Farm Service, Inc., and Crop Production Services, Inc. (collectively, "Defendants") (Plaintiff and Defendants are collectively referred to as the "Parties") in the case entitled *Bobby Grayson, III. v. Nutrien, et al.*, United States District Court, Eastern District of California, Case No. 1:21-cv-00986-ADA-BAM ("Action"), which may affect your legal rights.  On [date of Preliminary Approval], the Court granted preliminary approval of the settlement and scheduled a hearing on [hearing date] at [hearing time] ("Final Approval Hearing") to determine whether or not the Court should grant final approval of the settlement.

## I.    IMPORTANT DEFINITIONS

"**Class**" means all current and former non-exempt employees who worked for any of the Defendants within the State of California at any time during the Class Period.

"**Class Member**" means a member of the Class.

"**Class Period**" means the time period from October 6, 2016 through June 7, 2023.

"**Class Settlement**" means the settlement and resolution of all Released Class Claims (described in Section III.D below).

"**PAGA Employees**" means all current and former non-exempt employees who worked for any of the Defendants within the State of California at any time during the PAGA Period.

"**PAGA Period**" means the time period from September 2, 2019 through June 7, 2023.

"**PAGA Settlement**" means the settlement and resolution of Released PAGA Claims (described in Section III.D below).

## II.    BACKGROUND OF THE LAWSUIT

On April 2, 2021, Plaintiff commenced a class action lawsuit by filing a Class Action Complaint for Damages in the Tulare County Superior Court, Case No. VCU286503.  On March 25, 2021, Plaintiff provided written notice to the California Labor and Workforce Development Agency ("LWDA") and Defendants of the specific provisions of the California Labor Code that Plaintiff contends were violated ("PAGA Notice").  On June 1, 2021, Plaintiff filed a First Amended Class Action Complaint for Damages & Enforcement Under the Private Attorneys General Act, California Labor Code § 2698, *Et Seq*. On June 21, 2021, the Action was removed to the United States District Court, Eastern District of California and assigned Case No. 1:21-cv-00986-NONE-BAM (later changed to 1:21-cv-00986-ADA-BAM).  On August 13, 2021, the Court, pursuant to the Parties' joint stipulation, accepted Plaintiff's Second Amended Class Action Complaint for Damages & Enforcement Under the Private Attorneys General Act, California Labor Code § 2698, *Et Seq*.  On October 25, 2021, Plaintiff filed a Third Amended Class Action Complaint for Damages & Enforcement Under the Private Attorneys General Act, California Labor Code § 2698, *Et Seq*. On June 30, 2023, Plaintiff filed a Fourth Amended Class Action Complaint for Damages & Enforcement Under the Private Attorneys General Act, California Labor Code § 2698, *Et Seq*. ("Operative Complaint").  Plaintiff alleges that Defendants failed to properly pay minimum and overtime wages, provide compliant

1

meal and rest breaks and/or pay premium wages in lieu thereof, timely pay wages during employment and upon termination of employment and associated waiting-time penalties, provide accurate wage statements, keep requisite payroll records, failed to provide employees with written notices that set forth the amount of paid sick leave available or paid time off leave the employer provides in lieu of sick leave, failed to reimburse business expenses, and thereby engaged in unfair business practices in violation of the California Business & Professions Code section 17200, *et seq*., and conduct that gives rise to penalties under the California Labor Code section 2698, *et seq*. ("PAGA"). Plaintiff seeks, among other things, recovery of unpaid wages (including, but not limited to unpaid minimum and overtime wages), unpaid meal and rest period premiums, unreimbursed business expenses, restitution, penalties, interest, and attorneys' fees and costs.

Defendants deny all of the allegations in the Action or that they violated any law.

The Parties participated in mediation with a respected class action mediator, and as a result, the Parties reached a settlement. The Parties have since entered into the Joint Stipulation of Class Action and PAGA Settlement and Release ("Settlement Agreement," "Settlement," or "Settlement Agreement").

On [date of Preliminary Approval], the Court entered an order preliminarily approving the Settlement. The Court has appointed Phoenix Settlement Administrators as the administrator of the Settlement ("Settlement Administrator"), Plaintiff Bobby Grayson, III as representative of the Class ("Class Representative"), and the following Plaintiff's attorneys as counsel for the Class ("Class Counsel"):

Arby Aiwazian
Joanna Ghosh
Annabel Blanchard
**Lawyers *for* Justice, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Telephone: (818) 265-1020 / Fax: (818) 265-1021

If you are a Class Member, you do not need to take any action to receive an Individual Settlement Payment, but you have the opportunity to request exclusion from the Class Settlement (in which case you will not receive an Individual Settlement Payment), object to the Class Settlement, and/or dispute the Workweeks credited to you, if you so choose, as explained more fully in Sections III and IV below. If you are a PAGA Employee, you do not need to take any action to receive an Individual PAGA Payment.

The Settlement represents a compromise and settlement of highly disputed claims. Nothing in the Settlement is intended or will be construed as an admission by Defendants that the claims in the Action have merit or that Defendants have any liability to Plaintiff, Class Members, or PAGA Employees. Plaintiff and Defendants, and their respective counsel, have concluded and agree that, in light of the risks and uncertainties to each side of continued litigation, the Settlement is fair, reasonable, and adequate, and is in the best interests of Class Members and PAGA Employees. The Court has made no ruling on the merits of the claims asserted in the Action and has determined only that certification of the Class for settlement purposes is appropriate under California law. The Court has determined only that there is sufficient evidence to suggest that the proposed Settlement might be fair, adequate, and reasonable, and that any final determination of those issues will be made at the Final Approval Hearing.

## III.   SUMMARY OF THE PROPOSED SETTLEMENT

### A.   Settlement Formula

The total Maximum Settlement Amount is Four Million Five Hundred Thousand Dollars ($4,500,000) (the "Maximum Settlement Amount"). The portion of the Maximum Settlement Amount that is available for payment to Class Members is referred to as the "Net Settlement Amount." The Net Settlement Amount will be the Maximum Settlement Amount less the following payments which are subject to approval by the Court: (1) attorneys' fees, in an amount not to exceed 35% of the Maximum Settlement Amount (i.e., $1,575,000) and reimbursement of litigation costs and expenses in an amount not to exceed Sixteen Thousand Dollars ($16,000) (collectively, "Attorneys' Fees and Costs") to Class Counsel; (2) Enhancement Award in an amount not to exceed Twelve Thousand Five Hundred Dollars ($12,500) to Plaintiff for his services in the Action; (3) the amount of Five Hundred Thousand Dollars ($500,000) allocated toward civil penalties under the Private Attorneys General Act ("PAGA Amount"); and (4) Settlement Administration Costs in an amount not to exceed

Twenty-Six Thousand Dollars ($26,000.00) to the Settlement Administrator. The PAGA Amount will be distributed 75% to the LWDA (i.e., $375,000) ("LWDA Payment") and the remaining 25% (i.e., $125,000) will be distributed to PAGA Employees ("PAGA Employee Amount").

Class Members are eligible to receive payment under the Class Settlement of their proportional share of the Net Settlement Amount ("Individual Settlement Share") based on the number of weeks each Class Member worked for any of the Defendants as a non-exempt employee in California during the Class Period ("Workweeks").

The Settlement Administrator has divided the Net Settlement Amount by the Workweeks of all Class Members to yield the "Estimated Workweek Value," and multiplied each Class Member's individual Workweeks by the Estimated Workweek Value to yield his or her estimated Individual Settlement Share that he or she may be eligible to receive under the Class Settlement (which is listed in Section III.C below).

Each Individual Settlement Share will be allocated as twenty percent (20%) wages, which will be reported on an IRS Form W-2, and eighty percent (80%) interest, penalties, and other non-wage damages, which will be reported on an IRS Form 1099 (if applicable). Each Individual Settlement Share will be subject to reduction for the employee's share of payroll taxes and withholdings with respect to the wages portion of the Individual Settlement Share (the net payment is referred to as "Individual Settlement Payment"). The employers' share of taxes and contributions in connection with the wages portion of the Individual Settlement Shares ("Employer Taxes") shall be paid by Defendants separately and in addition to the Maximum Settlement Amount.

PAGA Employees are eligible to receive payment under the PAGA Settlement of their proportional share of the PAGA Employee Amount ("Individual PAGA Payment") based on their Workweeks during the PAGA Period in proportion to the total Workweeks of all PAGA Employees during the PAGA Period.

The Settlement Administrator has divided the PAGA Employee Amount, i.e., 25% of the PAGA Amount, by the total number of Workweeks of all PAGA Employees during the PAGA Period to yield the "PAGA Workweek Value," and multiplied each PAGA Employee's individual Workweeks during the PAGA Period by the PAGA Workweek Value to yield his or her Individual PAGA Payment (which is listed in Section III.C below).

Each Individual PAGA Payment will be allocated as 100% penalties, which will be reported on IRS Form 1099 (if applicable).

If the Court grants final approval of the Settlement, Individual Settlement Payments will be mailed to Settlement Class Members and Individual PAGA Payments will be mailed to PAGA Employees at the address that is on file with the Settlement Administrator. **If the address to which this Notice was mailed is not correct, or if you move after you receive this Notice, you must provide your correct mailing address to the Settlement Administrator as soon as possible to ensure you receive any payment that you may be entitled to under the Settlement.**

### B.   Your Workweeks Based on Defendants' Records

According to Defendants' records,

- **From October 6, 2016 through June 7, 2023 (i.e., the Class Period), you are credited as having [_____] Workweeks.**
- **From September 2, 2019 through June 7, 2023 (i.e., the PAGA Period), you are credited as having [_____] Workweeks.**

If you wish to dispute the Workweeks credited to you, you must submit a written letter ("Workweeks Dispute"), which must: (a) contain the case name and number of the Action (*Bobby Grayson, III v. Nutrien, et al.*, Case No. 1:21-cv-00986-ADA-BAM); (b) contain your full name, signature, address, telephone number, and last four (4) digits of your Social Security Number; (c) clearly state that you dispute the number of Workweeks credited to you and what you contend is the correct number to be credited to you; (d) attach any documentation that you have to support the dispute; and (e) be submitted by mail to the Settlement Administrator at the specified address listed in Section IV.B below, postmarked on or before [Response Deadline].

**C.**      **Your Estimated Individual Settlement Share and Individual PAGA Payment**

As explained above, your estimated Individual Settlement Share and Individual PAGA Payment is based on the number of Workweeks credited to you.

> **Under the terms of the Settlement, your Individual Settlement Share is estimated to be $_____.**
> **The Individual Settlement Share is subject to reduction for the employee's share of taxes and withholdings with respect to the wages portion of the Individual Settlement Share.**
>
> **Under the terms of the Settlement, your Individual PAGA Payment is estimated to be $_____.**

The settlement approval process may take multiple months. The amount of your Individual Settlement Share and Individual PAGA Payment (if applicable) reflected in this Notice is only an estimate. Your actual Individual Settlement Share and Individual PAGA Payment (if applicable) may be higher or lower. Payments will be distributed only after the Court grants final approval of the Settlement, and after the Settlement goes into effect.

**D.**      **Release of Claims**

Upon the Effective Date and full funding of the Maximum Settlement Amount, Plaintiff and all Class Members who do not submit a timely and valid Request for Exclusion (i.e., Settlement Class Members) will be deemed to have fully, finally and forever released, settled, compromised, relinquished, and discharged the Released Parties of all Released Class Claims whether known or unknown.

Upon the Effective Date and full funding of the Maximum Settlement Amount, Plaintiff and the State of California will be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged the Released Parties of all Released PAGA Claims whether known or unknown. Plaintiff does not release any PAGA Employee's claim for wages or damages. However, PAGA Employees who are also Settlement Class Members will be deemed to have fully, finally and forever released, settled, compromised, relinquished, and discharged the Released Parties of all Released Class Claims whether known or unknown.

"Released Class Claims" means all causes of action and factual or legal theories that were alleged in the Operative Complaint or reasonably could have been alleged based on the facts and legal theories contained in the Operative Complaint, for violations of the California Labor Code, including *inter alia* sections 201, 202, 203, 204, 226(a), 226.7, 246, 510, 512(a), 551, 552, 1174(d), 1194, 1197, 1197.1, 1198, 2800 and 2802, and Industrial Welfare Commission Wage Orders, including *inter alia*, Wage Orders 1-2001, 7-2001, 8-2001, 13-2001, 14-2001 and 16-2001, including all of the following claims for relief: (a) failure to pay all and overtime wages due; (b) failure to provide proper meal periods, and to properly provide premium pay in lieu thereof; (c) failure to provide proper rest periods, and to properly provide premium pay in lieu thereof; (d) failure to pay all minimum wages due.; (e) failure to pay all wages timely during employment; (f) failure to pay all wages timely at the time of termination; (g) failure to provide complete, accurate or properly formatted wage statements; (h) failure to provide an employee with written notice that sets forth the amount of paid sick leave available or paid time off leave an employer provides in lieu of sick leave; (i) failure to keep complete and accurate payroll records; (j) failure to reimburse business expenses; (k) unfair business practices that could have been premised on the claims, causes of action or legal theories of relief described above or any of the claims, causes of action or legal theories of relief pleaded in the Operative Complaint; (l) any other claims or penalties under the wage and hour laws pleaded in the Action; and (m) all damages, penalties, interest and other amounts recoverable under said claims, causes of action or legal theories of relief.

"Released PAGA Claims" means all causes of action and factual or legal theories for civil penalties under the California Labor Code Private Attorneys General Act of 2004 against any of the Released Parties that were alleged in the Operative Complaint or reasonably could have been alleged based on the facts and legal theories contained in the PAGA Notices and Operative Complaint, for violations of the California Labor Code, including *inter alia* sections 201, 202, 203, 204, 226(a), 226.7, 246, 510, 512(a), 551, 552, 1174(d), 1194, 1197, 1197.1, 1198, 2800 and 2802, and Industrial Welfare Commission Wage Orders, including *inter alia*, Wage Orders 1-2001, 7-2001, 8-2001, 13-2001, 14-2001 and 16-2001, including all of the following: (a) failure to pay all and overtime wages due; (b) failure to provide proper meal periods and to properly provide premium pay in lieu thereof; (c) failure to provide proper rest periods, and to properly provide premium pay in lieu thereof; (d) failure to pay all minimum wages due; (e) failure to pay all wages timely during employment; (f) failure to pay all wages timely at the time of termination; (g) failure to provide complete, accurate or properly formatted wage statements; (h) failure to provide a employees with written notice that sets forth the amount of paid sick leave available or paid time off leave the employer provides in lieu of sick leave; (i) failure to keep complete and accurate payroll records; and (j) failure to reimburse business expenses.

"Released Parties" means Nutrien Ltd, Nutrien Ag Solutions, Inc., Nutrient US LLC, Agrium U.S. Inc., Loveland Products, PCS Administration (USA), Inc., Crop Production Services, Inc., Western Farm Services, Inc., and each of their past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers..

### E.     Attorneys' Fees and Costs to Class Counsel

Class Counsel will seek attorneys' fees in an amount not to exceed thirty-five percent (35%) of the Maximum Settlement Amount (i.e., $1,575,000) and reimbursement of litigation costs and expenses in an amount not to exceed Sixteen Thousand Dollars ($16,000) (collectively, "Attorneys' Fees and Costs"), subject to approval by the Court.  The Attorneys' Fees and Costs granted by the Court will be paid from the Maximum Settlement Amount. Class Counsel has been prosecuting the Action on behalf of Plaintiff, Class Members, and PAGA Employees on a contingency fee basis (that is, without being paid any money to date) and has been paying all litigation costs and expenses.

### F.     Enhancement Payment to Plaintiff

Plaintiff will seek the amount of up to Twelve Thousand Five Hundred Dollars ($12,500) ("Enhancement Payment"), in recognition of his services in connection with the Action.  The Enhancement Award will be paid from the Maximum Settlement Amount, subject to approval by the Court, and if awarded, will be paid to Plaintiff in addition to his Individual Settlement Payment and Individual PAGA Payment that he is entitled to under the Settlement.

### G.     Settlement Administration Costs to Settlement Administrator

Payment to the Settlement Administrator is estimated not to exceed Twenty-Six Thousand Dollars ($26,000) ("Settlement Administration Costs") for the costs of the notice and settlement administration process, including and not limited to, the expense of notifying the Class Members of the Settlement, processing Requests for Exclusion, Objections, and Workweeks Disputes, calculating Individual Settlement Shares, Individual Settlement Payments, and Individual PAGA Payments, and distributing payments and tax forms under the Settlement, and shall be paid from the Maximum Settlement Amount, subject to approval by the Court.

## IV.     WHAT ARE YOUR RIGHTS AND OPTIONS AS A CLASS MEMBER?

### A.     Participate in the Settlement

**If you want to participate in the Settlement and receive money from the Settlement, you do not have to do anything**. You will automatically be included in the Class Settlement and issued your Individual Settlement Payment unless you decide to exclude yourself from the Class Settlement.

Unless you elect to exclude yourself from the Class Settlement, you will be bound by the terms of the Class Settlement and any judgment that may be entered by the Court based thereon, and you will release the Released Class Claims described in Section III.D above.

If you are a PAGA Employee, you will automatically be included in the PAGA Settlement and issued your Individual PAGA Payment. This means you will be bound by the terms of the PAGA Settlement and any judgment that may be entered by the Court based thereon will have a claim preclusive effect with respect to the Released PAGA Claims described in Section III.D above.

Class Members and PAGA Employees will not be separately responsible for the payment of attorney's fees or litigation costs and expenses, unless they retain their own counsel, in which event they will be responsible for their own attorney's fees and expenses.

### B.     Request Exclusion from the Class Settlement

Class Members may request to be excluded from the Class Settlement by submitting a written letter ("Request for Exclusion"), which must: (a) contain the case name and number of the Action (*Bobby Grayson, III v. Nutrien, et al.*, Case No. 1:21-cv-00986-ADA-BAM); (b) contain your full name, signature, address, telephone number, and last four (4) digits of your Social Security Number; (c) contain a clear written statement indicating that you seek exclusion from the Class Settlement; and (d) be submitted by mail to the Settlement Administrator at the specified address below, postmarked on or

before [Response Deadline].

[Settlement Administrator]
[Mailing Address]

If the Court grants final approval of the Settlement, any Class Member who submits a timely and valid Request for Exclusion will not be entitled to receive an Individual Settlement Payment, will not be bound by the Class Settlement (and the release of Released Class Claims described in Section III.D above), and will not have any right to object to, appeal, or comment on the Class Settlement. Class Members who do not submit a timely and valid Request for Exclusion will be deemed Settlement Class Members and will be bound by all terms of the Settlement, including those pertaining to the release of claims described in Section III.D above, as well as any judgment that may be entered by the Court based thereon. PAGA Employees will be bound to the PAGA Settlement (and the claim preclusive effect of any final order and judgment entered by the Court with respect to the  Released PAGA Claims described in Section III.D above) and will still be issued an Individual PAGA Payment, irrespective of whether they submit a Request for Exclusion from the Class Settlement.

## C.    Object to the Class Settlement

A Class Member may object to the Class Settlement, as long as he or she has not submitted a Request for Exclusion (i.e., is a Settlement Class Member), by submitting a written objection ("Objection"), which must: (a) contain the case name and number of the Action (*Bobby Grayson, III v. Nutrien, et al.*, Case No. 1:21-cv-00986-ADA-BAM); (b) contain  your full name, signature, address, telephone number, and last four (4) digits of your Social Security Number; (c) contain a written statement of all grounds for the objection accompanied by any legal support for such objection; (d) contain copies of any papers, briefs, or other documents upon which the objection is based; and (e) be submitted by mail to the Settlement Administrator at the specified address listed in section IV.B. above, postmarked on or before [Response Deadline].

Settlement Class Members may also present their objection orally at the Final Approval Hearing, irrespective of whether they submit an Objection.

## V.    FINAL APPROVAL HEARING

The Court will hold a Final Approval Hearing in Courtroom 8 of the United States District Court, Eastern District of California, located at 2500 Tulare Street, 6th Floor, Fresno, California 93721, on [date], at [time], to determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The Court also will be asked to approve and grant the Attorneys' Fees and Costs to Class Counsel, Enhancement Payment to Plaintiff, and Settlement Administration Costs to the Settlement Administrator.

The hearing may be continued without further notice to Class Members.  It is not necessary for you to appear at the Final Approval Hearing, although you may appear if you wish to. Personal appearances and telephonic appearances are an option.

On the Court's website, you can find information regarding appearing remotely via telephonically or by video conference (for the Final Approval Hearing that is scheduled to be held in Courtroom 8 of the United States District Court, Eastern District of California):
https://www.caed.uscourts.gov/caednew/assets/File/BAM/BAM%202022%20Standing%20Order%20(Revised).pdf

## VI.    ADDITIONAL INFORMATION

The above is a summary of the basic terms of the Settlement.  For the precise terms and conditions of the Settlement Agreement, you should review the detailed Settlement Agreement and other court records by using Public Access to Court Electronic Records System ("Pacer") (for a fee) through the Court's Pacer system at https:///pacer.uscourts.gov/.

**PLEASE DO NOT TELEPHONE THE COURT OR THE OFFICE OF THE CLERK FOR INFORMATION REGARDING THIS SETTLEMENT.**

**IF YOU HAVE ANY QUESTIONS, YOU MAY CALL THE SETTLEMENT ADMINISTRATOR AT THE FOLLOWING TOLL-FREE NUMBER: [INSERT], OR YOU MAY ALSO CONTACT CLASS COUNSEL.**

**6**
